FRANKLIN FIRE INS. CO. *et al. v.* BREWER.

(Division A. Feb. 18, 1935.)

[159 So. 545. No. 31500.]

(Division A.  April 1, 1935.)

[160 So. 387.  No. 31500.]

Watkins & Eager, of Jackson, and **H. T. Odom**, of Greenwood, for appellants.

320

Gardner, Denman & Gardner, of Greenwood, for appellee.

324

Argued orally by **Pat Eager**, for appellant.

**Smith, C. J.**, delivered the opinion of the court.

The appellee sued, in separate actions, the Franklin Fire Insurance Company and the Yorkshire Insurance Company on fire insurance policies issued by them on the same building. The two cases were consolidated and tried as one; the pleadings and the issues in each being identical. The appellee recovered a judgment against each of the defendants.

The policy issued by the Yorkshire Insurance Company limited the amount of recovery thereon to one thousand five hundred dollars, and that issued by the Franklin Fire Insurance Company limited the amount of recovery to two thousand dollars. After pleading the general issue, the appellants filed special pleas alleging that the building insured was only partially destroyed by fire, and "that said plaintiff should not have and maintain his suit against this defendant nor recover anything by reason of said suit, for that it is expressly provided

by the terms of the policy contract sued on, and identified as Exhibit 'A.' to plaintiff's declaration, as follows: 'This company shall not be liable beyond the actual cash value of the property at the time any loss or damage occurs, and the loss or damage shall be ascertained or estimated according to such actual cash value, with proper deduction for depreciation, however caused, and shall in no event exceed what it would then cost the insured to repair or replace the same with material of like kind and quality; said ascertainment or estimate shall be made by the insured and this company, or, if they differ, then by appraisers, as hereinafter provided; and, the amount of loss or damage having been thus determined, the sum for which this company is liable pursuant to this policy shall be payable sixty days after due notice, ascertainment, estimate, and satisfactory proof of loss have been received by this company in accordance with the terms of this policy. . . .' In the event of disagreement as to the amount of loss the same shall, as above provided, be ascertained by two competent and disinterested appraisers, the insured and this company each selecting one, and the two so chosen shall first select a competent and disinterested umpire; the appraisers together shall then estimate and appraise the loss, stating separately sound value and damage, and failing to agree, shall submit their differences to the umpire; and the award in writing of any two shall determine the amount of such loss; the parties thereto shall pay the appraiser respectively selected by them, and shall bear equally the expenses of the appraisal and umpire.

" 'This company shall not be held to have waived any provision or condition of this policy or any forfeiture thereof by any requirement, act, or proceeding on its part relating to the appraisal or to any examination herein provided for; and the loss shall not become payable until sixty days after the notice, ascertainment, estimate,

and satisfactory proof of the loss herein required have been received by this company, including an award by appraisers when appraisal has been required.' ''

The special pleas also alleged that, failing to agree on the amount of the loss, the parties entered into a written agreement for submission to appraisers designated therein for the ascertainment of the amount of loss and damage caused by the fire. This agreement, after appointing the appraisers, directed them to ''appraise and estimate the sound value of the below described property and the amount of loss and damage thereon caused by the fire which occurred on the 23rd day of April, 1933. . . . 'It is expressly stipulated and agreed that the appraisement provided for by this agreement is for the purpose of ascertaining and fixing the sound value of said property and the amount of said loss and damage only,' '' etc.

The pleas further alleged that the appraisers, without the intervention of the umpire, agreed that the sound value of the property was two thousand seven hundred fifty dollars, and the loss and damage thereto was one thousand six hundred eighty-two dollars and forty-four cents. This agreement and award of the appraisers were made exhibits to the plea. The pleas further alleged that, for reasons therein set forth, the suit was prematurely brought and should be abated.

Demurrers to these pleas were sustained, and the cases proceeded to trial on the declarations and the pleas of the general issue, under which pleas the appellants gave written notice that they would prove certain matters and things, a comparison of which with the special pleas discloses that they were identical therewith.

At the trial the appellants offered in evidence the appraisal agreements and the awards thereunder, but, on objection of the appellee, were not permitted to introduce them.

The demurrers to the special pleas were properly sustained. The award of the appraisers is pleaded in bar of the plaintiff's action, and such is not its effect; the awards do not bar an action on the policies, but only fix the amount of recovery thereunder in event the loss was partial. Whether such awards can be set up by special pleas in bar of the recovery of an amount greater than that awarded is not before us; but see Scottish Union & National Ins. Co. v. Skaggs, 114 Miss. 625, 75 So. 437. In so far as the pleas allege that the suit was prematurely filed and therefore should be abated, it will be sufficient to say that: "Pleading in bar was a waiver of matters in abatement." Clarke Lewis et al. v. State, 65 Miss. 468, 4 So. 429, 431; Rice v. Patterson, 92 Miss. 666, 46 So. 255; Sections 532 and 533, Code 1930. This brings us to the exclusion from the evidence of the award of the appraisers. Counsel for the appellee says, first, the provision of the policy requiring this appraisal is void under the valued policy law, section 5183, Code 1930; second, the agreement for the appraisal was without consideration; third, no notice was given the appellee by the appraisers of "their intention to meet in carrying out said alleged agreement;" and, fourth, the error, if such there was, in the exclusion of the awards, is harmless, for the reason that the jury found that the building was totally destroyed.

Section 5183, Code 1930, provides that where the property insured is totally destroyed by fire, the insured "shall not be permitted to deny that the property insured was worth at the time of issuing the policy the full value upon which the insurance is calculated and the measure of damage shall be the amount for which the property was insured. . . . In case of partial loss, or damage by fire, to real property or buildings, household or kitchen furniture, the measure of damages shall be an amount equal to the damage done the property not

to exceed the amount written in the policy." While this section writes out of a fire insurance policy any provision therein requiring an appraisal of the loss when the building insured has been totally destroyed, Ætna Ins. Co. v. Cowan, 111 Miss. 453, 71 So. 746; 26 C. J. 417; 7 Cooley's Briefs on Insurance, 6133, it does not prohibit agreements for appraisement of a partial loss. Ætna Ins. Co. v. Cowan, supra, and Scottish Union & National Ins. Co. v. Skaggs, supra.

The provisions for the ascertainment of the loss by appraisers appear in, and are parts of, the policies of insurance, and are supported by the same consideration that supports all other stipulations in the policies. Notice to the appellee of the intention of the appraisers to meet and appraise the loss was not necessary; it not being required either by the policies or the appraisal agreement, which do not contemplate a conclusion to be reached by the appraisers on the testimony of witnesses, but from an inspection of the building. That the jury found that the building had been totally destroyed is here of no consequence, for the reason that the verdict and judgment must be reversed on another ground.

Over the objection of the appellants, a view of the building by the court and jury was granted. The ground of this objection in the court below was that, "It has been over a year since the fire occurred and the plaintiff's witnesses have already testified that it shows deterioration by exposure to the elements, and it is incompetent for the jury to view the premises at this time."

An examination of the evidence that had been introduced when the view was granted does not disclose the facts set forth in this objection.

For the same reason, i. e., that the evidence does not disclose a material change in the building since the fire, the testimony of the witnesses who examined it a short time before the trial as to whether the loss was total or partial was properly admitted.

. The court charged the jury that in event they should find that the building was totally destroyed to return a verdict for the amount of the policies "and interest."

It is said by counsel for the appellee that the jury should have instructed to allow interest only from sixty days after notice to the appellants of the award of the appraisers; the policies providing that they should have that time thereafter in which to pay the amount of the award.

As hereinbefore said, the appraisal provisions of the policies do not apply if the building was totally destroyed. If it was, in fact, totally destroyed, the appellants should have paid the amount of the policies when the usual proofs thereof were made in accordance with the policies, or when the making of such proof was waived. If the appellee had declined to comply with the appraisal agreement, whether or not the loss was partial, and, therefore, necessitated his compliance therewith before he could sue on the policies, it could have been ascertained, and the rights of the appellants, under the agreement, protected by a plea in abatement, as was done in Ætna Ins. Co. v. Cowan, supra.

The court charged the jury in several instructions for the appellee that the building was totally destroyed, within the meaning of the policies, if it (1) "was destroyed in a manner that makes it unfit for the use for which it was constructed and used." (2) "Has been damaged by fire to the extent that it is wholly useless to plaintiff as a dwelling." (3) "Has lost its identity and specific character as a building and can no longer be properly designated as a building, although some of the materials are not wholly destroyed, and some of the walls may remain standing." (4) "Was so damaged by fire as to render it useless for the purpose for which it had been used." (5) "Is so badly damaged by fire as to be useless to plaintiff."

The courts have had considerable difficulty in determining what constitutes the total loss of a building by fire within the meaning of policies of insurance. According to the author of the note to the case of Antonio Monteleone v. Royal Ins. Co., etc., 47 La. Ann. 1563, 18 So. 472, 56 L. R. A. 784, two conflicting rules have been adopted, which are as follows: "One rule—and it is the earlier one—provides that a total loss has been sustained whenever the building has been so injured as to lose its identity and specific character as such; and the other declares that it is not totally destroyed so long as a substantial remnant remains which a prudent uninsured person would use in rebuilding; and the reported decisions are founded on one or the other of these rules."

"Most of the recent cases," according to the author of the note to the case of Springfield Fire & Marine Ins. Co. v. Harry Homewood, 32 Okla. 521, 122 P. 196, 39 L. R. A. (N. S.) 1182, "however, follow the latter rule as laid down above, and apply the test of a substantial, usable remnant remaining." 6 Cooley's Briefs on Insurance, 5025 et seq.; 7 Couch Cyclopaedia of Insurance Law, section 1692; 26 C. J. 349.

As said by the Supreme Court of Minnesota in the case of Northwestern Mutual Life Ins. Co. v. Rochester German Ins. Co., 85 Minn. 48, 88 N. W. 265, 270, 56 L. R. A. 108, "Where the line is to be drawn between these two conditions is, in each particular case, a question of fact. It adds nothing to say that total loss occurs when the identity and specific character of the structure is destroyed. We receive no aid from the suggestion that total loss ensues when the reconstructed building would be recognized as a new, rather than the old, structure. No light is thrown on the situation by the declaration that total loss follows from the fact that the remnants constitute a mass of ruins, for amidst the ruins may remain a subsantial part of the building. . . . In ar-

riving at a determination of what a prudent owner would do under such circumstances, it is proper to consider not only the condition of the walls standing, whether they are suitable, in place, to be used as a part of the reconstruction, but also the relative value of such walls, in place, as compared with the cost of rebuilding. It does not follow that, because some part of the remnants may be utilized, in place, there is not substantial and total destruction and loss. The law will not take note of trifles in this respect. It follows that there must remain a substantial part of the building in place, which, with reasonable repairs, can be used in its reconstruction. What such substantial part is is a question of fact depending upon the nature and cost of the structure and the character and condition of the remaining parts.''

It only remains to be said that substantial parts of a building must remain in place, above the foundation, in order to prevent the destruction of the building from being total. If only the foundation of the building remains in place, the building is totally destroyed within the meaning of the policies, although some parts of the building remain in such condition as to be of value as salvage. Scottish Union & Nat'l Insurance Co. v. Warren Gee Lumber Company, 118 Miss. 740, 80 So. 9.

These instructions should not have been granted.

Reversed and remanded.

### On Suggestion of Error.

**McGowen, J.,** delivered the opinion of the court on suggestion of error.

On February 18th this case was reversed and remanded. In its suggestion of error the appellant calls our attention to the fact that we did not pass upon the competency of the evidence of witness J. T. Spence. This witness for appellee testified over the objection of appellant that the cost of construction of the house, when

new, was four thousand three hundred dollars. This evidence was incompetent, and it was error for the court below to admit it. With this amendment we adhere to the former opinion.

Suggestion of error overruled.