**QBE INSURANCE CORPORATION,**
Appellant,

v.

**TWIN HOMES OF FRENCH RIDGE HOMEOWNERS ASSOCIATION,**
Respondent.

No. A09–929.

Court of Appeals of Minnesota.

Feb. 23, 2010.

Douglas R. Archibald, Megan D. Hafner, Jessica C. Kunz, Terhaar, Archibald, Pfefferle & Griebel, LLP, Minneapolis, MN, for appellant.

Ryan P. Myers, Christopher P. Parrington, Skjold Barthel, P.A., Minneapolis, MN, for respondent.

Considered and decided by BJORKMAN, Presiding Judge; KLAPHAKE, Judge; and HALBROOKS, Judge.

## OPINION

KLAPHAKE, Judge.

Appellant QBE Insurance Corporation challenges the district court's grant of summary judgment in its declaratory judgment action regarding hail loss damages suffered by respondent Twin Homes of French Ridge Homeowners Association. Appellant claims that the district court erroneously concluded that an insurance appraisal panel did not exceed its authority by determining the value of loss to respondent by applying a replacement loss formula provided for in the parties' insurance contract. We agree with the district court and affirm. We also conclude that the district court did not abuse its discretion by denying appellant's motion for a continuance to conduct additional discovery.

## FACTS

In May 2007, a hail storm damaged the roofs of respondent's 16–building group of townhomes located in Plymouth. Appellant is respondent's insurer, and respondent sought coverage under the policy to repair the damage following the storm.

Consistent with the policy coverage provisions, when the parties could not agree on the amount of loss, respondent made a demand for appraisal of the loss, and each party selected its own appraiser. Appellant chose Brad Langerman and respondent chose Jason Biddle. Also in accordance with the policy coverage terms, when the two appraisers could not agree on the amount of loss, the parties agreed to select Galen Luedtke as an umpire in the appraisal process, and "[a]n agreement by any two [appraisers]" was to be "binding as to the amount of the loss."

The three appraisers visited the subject property on October 1, 2007. They examined six to eight of the townhome roofs and found "8–12 hail hits per roof, per building." The panel issued an appraisal award that provides $264,154 as "loss replacement cost" on the 16 buildings and states under "clarifications if any" that the loss is for "total roof replacement."

Appellant disagreed with the appraisal award and initiated a declaratory judgment action in district court to vacate the appraisal award or to correct the award to permit only direct physical loss damage. Appellant claimed that the insurance policy did not provide coverage for the damages claimed by respondent and that the appraisal panel exceeded its authority by awarding total roof replacement based on wear and tear and the unavailability of the roofing shingles that were used on the original roof.

Under the coverage provisions of the contract, appellant agreed to

pay for direct physical loss of or damage to "covered property" caused by or resulting from any COVERED CAUSE OF LOSS.... Coverage is also provided for "covered property" which is not damaged but which must be removed and replaced in order to repair "covered property" which is damaged by a COVERED CAUSE OF LOSS[.]

The coverage for the subject buildings included "valuation" of "guaranteed replacement cost." "Guaranteed replacement cost" is "subject to" the valuation limitations of "replacement cost," which states:

[W]e will pay no more than the least of the following:

a. The cost to repair or replace the property at the same site, regardless if repaired or replaced at the same site or another, without deduction for depreciation:

(1) With comparable material;

(2) With property of the same height, floor area and style; and

(3) With property intended for the same purpose;

b. The amount actually and necessarily expended in repairing or replacing the property at the same site; or,

c. The limit of insurance.

The parties proceeded with discovery, and Brad Langerman and Galen Luedtke filed affidavits. Luedtke also was deposed on February 5, 2008. Langerman stated that he did not agree with the appraisal panel award "because there were a few shingles damaged on each roof and [the other two panel members] believed that the identical shingles were not available for repair and thus they believed that the law required them to award 'total roof replacement.'" He also stated that the other appraisers made no effort to determine the availability of replacement shingles similar in function, color, and shape.

Luedtke's affidavit explained that a standard roof inspection for hail damage involves taking a representational sample and "mak[ing] statistical conclusions about the amount of hail damage incurred and replacement cost based upon those inspections, when a discontinued shingle[ ] is involved." He also stated that the appraisal process applied was customary and had been used in other inspections involving QBE, without objection. He further stated that based on his 43 years in the roofing industry he knew that the "shingles at Twin Homes were no longer manufactured (they were Certainteed-manufactured shingles, known as Hearthstead shingles)[.]" Finally, he stated that "[a]t no time did Mr. Langerman disagree with the rest of the Appraisal Panel that the shingles at Twin Homes were no longer available for purchase," and he pointed out that Langerman had made no objections to them about the inspection or about the appraisal process used by the panel.

In his deposition, Luedtke explained his reasoning in concluding that a total roof replacement was necessary, as follows:

This—these buildings could have potentially—it's always—and it's not just in these buildings. It's always a possibility to replace some of the shingles if the severity of the—not so much the damage but the condition of the shingle at that point in time would allow it. But because the shingle was not manufactured anymore, and it was not available, that wasn't even a consideration.

. . . .

[T]he right thing to do was to replace those roofs because you could not repair them in another way.

. . . .

What happens is depending on the direction the roof faces, and where the vents are on—in the roofs, these roofs

deteriorate at a different rate. And there was—there was, in my opinion, far too much variation to do it any other way but full replacement, because you'd end up with too much of a hodge-podge. What would have happened, because these roofs have dormers out the back that face different directions, they tie in, you got valleys and this little slope might have been ok. You would have gotten by. But then you had to tie it into another area, you'd have a different shingle on there. It just couldn't have been done.

. . . .

Pricewise, there wouldn't have been enough saving, in my opinion, to repair it to make it worthwhile. The difference in pricing I don't think would have been a whole lot different.

Respondent moved for summary judgment or, alternatively, dismissal of the case on January 22, 2008. The district court heard the motion on February 19, 2008 and granted summary judgment, concluding that the appraisal panel did not exceed its authority, that the appraisal panel's decision determined only the amount of loss, and that the appraisal panel's decision did not amount to a coverage determination.

The district court also rejected appellant's motion for a continuance to allow more time for discovery, particularly to depose Langerman and Biddle, and possibly other roofers. In rejecting the continuance motion, the district court stated that the appraisal award was based on interpretation of the parties' contract and not on "a review of the facts," that appellant had not identified possible facts that would change the outcome of the summary judgment motion, and that respondent had provided appellant with notice of that motion more than 70 days before the hearing.

Appellant's initial appeal to this court was dismissed as premature because the May 25, 2008 order for judgment in the amount of $264,154 had not been entered. On April 6, 2009, the district court entered judgment, including net damages of $97,383.56. Appellant then filed a second notice of appeal to this court.

## ISSUES

1. Did the appraisal panel exceed its authority by making an improper coverage determination, rather than a valuation determination of the amount of respondent's loss?

2. Did the district court abuse its discretion by denying appellant's continuance motion to allow appellant additional time for discovery?

## ANALYSIS

On appeal from summary judgment, this court reviews the record to "determine whether there are any genuine issues of material fact and whether a party is entitled to judgment as a matter of law." *In re Collier*, 726 N.W.2d 799, 803 (Minn. 2007); Minn. R. Civ. P. 56.03. This court views the record evidence "in the light most favorable to the party against whom summary judgment was granted." *Fabio v. Bellomo*, 504 N.W.2d 758, 761 (Minn. 1993).

 Interpretation of an insurance policy and its application to the facts in a case are questions of law subject to de novo review. *Am. Family Ins. Co. v. Walser*, 628 N.W.2d 605, 609 (Minn.2001). When interpreting an insurance contract, we give words their natural and ordinary meaning, and we resolve ambiguities in favor of the insured. *Id.*

## I.

■ Appraisal decisions are subject to Minn.Stat. § 572.08–.30 (2008), the arbitration statute. *David A. Brooks Enters., Inc. v. First Sys. Agencies,* 370 N.W.2d 434, 435 (Minn.App.1985). When an arbitration award is appealed to the district court by proper application, the court may confirm, modify, correct, or vacate the award. Minn.Stat. § 572.18. The district court "shall" vacate the award, among other grounds, if "[t]he arbitrators exceeded their powers." Minn.Stat. § 572.19, subd. 1(3). "Absent a clear showing that the arbitrators were unfaithful to their obligations, the courts assume that the arbitrators did not exceed their authority." *Hilltop Constr., Inc. v. Lou Park Apts.,* 324 N.W.2d 236, 239 (Minn.1982); *accord EEC Prop. Co. v. Kaplan,* 578 N.W.2d 381, 383 (Minn.App.1998) ("Unless there is a clear showing that arbitrators were unfaithful to their obligations, courts assume they did not exceed their powers"), *review denied* (Minn. Aug. 31, 1998). As the party seeking to vacate the award, appellant bears the burden of proving that the appraisal panel exceeded its powers. *Nat'l Indem. Co. v. Farm Bureau Mut. Ins. Co.,* 348 N.W.2d 748, 750 (Minn.1984).

■ Appellant claims that the appraisal panel's decision constituted an impermissible coverage determination rather than merely a determination of the value of respondent's loss. "It is well settled that appraisal does not determine liability under a policy. Liability depends on a judicial determination." *Johnson v. Mut. Serv. Cas. Ins. Co.,* 732 N.W.2d 340, 346 (Minn.App.2007), *review denied* (Minn. Aug. 21, 2007).[1]

The policy's replacement loss formula directed the panel to determine the value of the loss by (1) repair or replacement cost of the damaged shingles (using comparable materials), (2) the amount actually and necessarily expended to repair or replace the shingles, or (3) the limits of insurance. The appraisal panel determined that the loss could not be remedied by repair or replacement because the shingles used on the buildings were no longer manufactured and/or the non-damaged shingles were too worn to be suitable to connect to new shingles, so they rejected the first valuation method and applied the second. Consistent with the policy's second valuation method, they determined the amount that would need to be expended to repair the roofs by using comparable shingles and arrived at an amount of $264,154. The panel "clarified" that the value of the loss was for "total roof replacement." Consistent with the plain language of the insurance contract allowing the panel to value the loss at the amount actually and necessarily expended to repair or replace the shingles, the panel's decision is a proper determination of the value of loss to respondent.

Appellant claims, however, that the appraisal panel's decision also included an impermissible coverage determination. The policy states under its coverage section that "[c]overage is also provided for 'covered property' which is not damaged but which must be removed and replaced in order to repair 'covered property' which is damaged by a COVERED CAUSE OF LOSS[.]" Appellant argues that this contract language indicates that the appraisal panel's decision necessarily included a cov-

---

1. In its brief, appellant states that it "is not arguing that the [a]ppraisal [p]anel should not have determined the cause of the loss. For purposes of this appeal, [appellant] does not take issue with the appraisers' determination as to causation. Instead, it is [appellant]'s position that the [a]ppraisal [p]anel improperly determined whether coverage existed under the [p]olicy for different types of damage."

erage determination, which should have been decided by a court rather than by an appraisal panel.

As appellant correctly points out, there is no Minnesota case law on point; the analysis of Minnesota cases does not extend beyond delineating that valuation issues are to be decided by appraisers and coverage issues are to be decided by courts. Other jurisdictions make similar delineations, but some further consider whether an appraisal for valuation may include some consideration of underlying liability, as long as it does not constitute a determination of coverage. *See, e.g., Rogers v. State Farm Fire & Cas. Co.*, 984 So.2d 382, 392 (Ala.2007) (holding that contract language referring to "amount of loss" authorized appraiser only to place dollar value on loss and not to determine cause of damage or other coverage issues); *Jefferson Ins. Co. v. Superior Court of Alameda County*, 3 Cal.3d 398, 90 Cal. Rptr. 608, 475 P.2d 880, 883 (1970) (interpreting "actual cash value or the amount of loss" to mean that appraisers could determine amount of damage relating to items submitted for their consideration, but not decide questions of coverage or policy interpretation); *Johnson v. State Farm Lloyds*, 204 S.W.3d 897, 903 (Tex.App. 2006) (stating that "if the parties agree there is coverage but disagree on the extent of the damage, the dispute concerns the 'amount of loss' and that issue is determined in accordance with the appraisal clause"), *aff'd* 290 S.W.3d 886 (Tex.2009); *Kendall Lakes Townhomes Developers, Inc. v. Agric. Excess & Surplus Lines Ins. Co.*, 916 So.2d 12, 16 (Fla.Ct.App.2005) (permitting "appraisal panel to decide causation issues when causation is not a coverage question, but rather an amount-of-loss question"); *Merrimack Mut. Fire Ins. Co. v. Batts*, 59 S.W.3d 142, 150 (Tenn.App. 2001) (interpreting "amount of loss" language to authorize appraiser only to value

property loss and not to resolve insurer's liability under policy), *review denied* (Tenn. Oct. 29, 2001); *Kawa v. Nationwide Mut. Fire Ins. Co.*, 174 Misc.2d 407, 664 N.Y.S.2d 430, 431 (N.Y.Sup.Ct.1997) ("appraisal clause only applies to a case with a disagreement 'as to the amount of loss or damage,' and not where the insurer denies liability").

In this case, the insurer has conceded that causation exists for purposes of coverage, but it questions only whether liability exists for purposes of valuation. The appraisal panel was authorized to decide valuation questions. Valuation was at issue, and the appraisal decided only that issue by arriving at a dollar figure representing the value of the loss. Thus, the appraisal panel's decision was within its authority, and the requirement that there be a "clear showing" that the appraisers exceeded their authority in deciding the matter was not met. In so ruling, we view any inconsistencies in the coverage and valuation provisions against the insurer and in favor of respondent. *See Walser*, 628 N.W.2d at 609. Therefore, we conclude that the appraisal panel did not exceed its authority in deciding the valuation of respondent's loss, and the district court properly affirmed the appraisal panel's decision and granted summary judgment.

## II.

■ Appellant next contends that the district court granted summary judgment prematurely because there were material facts at issue that could have been established by additional discovery. In particular, appellant contends that the district court should have allowed it to depose the other two appraisal panel members, Langerman and Biddle.

■ The rules of civil procedure permit a party to move for summary judgment "at

any time after the expiration of 20 days from the service of the summons." Minn. R. Civ. P. 56.01. But Minn. R. Civ. P. 56.06 allows a party to move for a continuance "to permit affidavits to be obtained or depositions to be taken or discovery to be had[.]" Such continuance motions should be liberally granted, especially where one party has had insufficient time to complete discovery. *Alliance for Metro. Stability v. Metro. Council*, 671 N.W.2d 905, 919 (Minn.App.2003). "A district court's decision to deny a motion for a continuance to conduct discovery is reviewed under an abuse-of-discretion standard." *Lewis v. St. Cloud State Univ.*, 693 N.W.2d 466, 473 (Minn.App.2005), *review denied* (Minn. June 14, 2005).

In deciding a motion for a continuance to allow more discovery, a district court considers the moving party's diligence in seeking discovery as well as the materiality of the facts that party is seeking. *See Rice v. Perl*, 320 N.W.2d 407, 412 (Minn.1982) (requiring party seeking continuance to show diligence in seeking discovery and good faith belief that material facts will be uncovered). But even if the moving party was diligent in seeking discovery, when further discovery will not reveal material facts, the district court may deny the continuance motion. *See id.* at 412. When summary judgment is involved, if the discovery would not assist the district court or change the result of the summary judgment motion, the district court does not abuse its discretion by granting the summary judgment motion without granting the continuance. *McCormick v. Custom Pools, Inc.*, 376 N.W.2d 471, 477 (Minn.App.1985), *review denied* (Minn. Dec. 30, 1985).

Appellant claims that the deposition testimony of the other two appraisal panel members "was essential to clarify the basis for the appraisal award, a fact material to the issue of whether the [a]ppraisal [p]anel made a coverage determination." The district court rejected this notion, stating that its summary judgment decision was "based on interpretation of the parties' contract and not a review of the facts." The court also noted that appellant's request for additional discovery time did not "identify possible facts that would change the outcome of the motion."

Appellant has not shown that additional facts were material to the issue to be decided by the district court—whether the appraisal panel exceeded its authority by making a coverage determination rather than a valuation of loss determination. This is a narrow legal issue that may be determined by reference to the insurance contract. Under these circumstances, the district court did not abuse its discretion by declining to grant appellant's motion for a continuance.

## DECISION

Because the appraisal panel made an insurance valuation determination of respondent's loss that was within its authority to make and which did not constitute a coverage determination, the district court properly granted summary judgment in favor of respondent in the declaratory judgment action. Because the issue to be decided by the district court was a matter of contract interpretation and appellant did not offer proposed additional facts that would be material to that decision, the district court did not abuse its discretion by denying appellant's motion for a continuance to conduct further discovery.

**Affirmed.**