David QUADE, et al., Appellants,

v.

SECURA INSURANCE, Respondent.

No. A10–714.

Court of Appeals of Minnesota.

Jan. 11, 2011.

Richard D. Snyder, Fredrikson & Byron, P.A., Minneapolis, MN, for appellants.

Susan D. Thurmer, Dawn L. Gagne, Robyn K. Johnson, Cousineau McGuire Chartered, Minneapolis, MN, for respondent.

Considered and decided by LANSING, Presiding Judge; MINGE, Judge; and CRIPPEN, Judge.

## OPINION

CRIPPEN, Judge.*

Appellants David and Melynda Quade, insured under a farm insurance policy issued by respondent Secura Insurance, challenge the district court's summary judgment dismissing their breach-of-contract claim. They also dispute the court's companion decision ordering the parties to participate in the appraisal process to resolve their dispute over respondent's obligation to pay for damage to three farm buildings. Finally, appellants claim it was

error to conclude that an appraisal award would be subject to statutes governing the vacation or confirmation of arbitration awards. We reverse and remand.

## FACTS

On July 10, 2008, a storm with high winds caused extensive damage to buildings on appellants' farm. Appellants are insured by respondent Secura Insurance under a "Special Farmowners Protector Policy" for direct physical loss caused by windstorms, excluding damages caused by faulty or inadequate maintenance of the property.

Appellants submitted a claim to respondent insurer for damage to several buildings that they asserted was caused by the storm. The insurer paid for damage to some of the buildings but denied payment for roof damage to three structures: a horse barn, a warehouse, and a cow barn. Based on its inspection, respondent determined that the roof damage resulted from "continual deterioration over a period of time rather than a specific storm occurrence." Because the policy excludes coverage for loss caused by inadequate maintenance, respondent denied the claim for roof damage.

Respondent advised appellants that they should initiate an appraisal pursuant to the policy if they disagreed with the denial of their roof damage claim. An appraisal clause in the policy provides that if the parties fail to agree on the "amount of loss," either may demand an appraisal.

Appellants initiated a breach-of-contract action in district court, contending that the appraisal clause did not apply because the dispute was not over the amount of loss but rather was over whether the roof dam-

* Retired judge of the Minnesota Court of Appeals, serving by appointment pursuant to

Minn. Const. art. VI, § 10.

age was covered by the policy. Respondent answered the complaint and asserted that the claims were excluded by the policy and that the district court lacked jurisdiction because of the appraisal clause in the insurance policy contract.

The district court initially held that, because respondent asserted that the loss was excluded from coverage, the dispute required interpretation of the insurance policy contract, "which is the province of the Courts not the appraisal process." The court retained jurisdiction and ordered respondent to respond to discovery requests.

This court subsequently denied respondent's request for a writ of prohibition, which sought to stop enforcement of the discovery order, noting that the insurer had not "genuinely challenged the amount of the claimed loss," and that the district court, not the appraisal process, was the appropriate forum for determining liability.

The district court then granted summary judgment to respondent. The court held that the parties' dispute concerned the cause and amount of the loss and that the determination of amount of loss under the appraisal clause properly includes a determination of causation. The court ordered the parties to participate in the appraisal process to determine the amount of loss caused by the storm, and dismissed the claim with prejudice.

## ISSUE

Did the district court err by ordering the parties to engage in the appraisal process?

## ANALYSIS

Summary judgment is appropriate when "the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that either party is entitled to a judgment as a matter of law." Minn. R. Civ. P. 56.03. On appeal from this judgment, we review de novo whether there are any genuine issues of material fact and whether the district court erred in its application of the law. *STAR Ctrs., Inc. v. Faegre & Benson, L.L.P.*, 644 N.W.2d 72, 77 (Minn.2002). We view the evidence "in the light most favorable to the party against whom judgment was granted." *Fabio v. Bellomo*, 504 N.W.2d 758, 761 (Minn.1993).

Interpretation of an insurance policy and its application to the facts are questions of law subject to de novo review. *QBE Ins. Corp. v. Twin Homes of French Ridge Homeowners Ass'n*, 778 N.W.2d 393, 397 (Minn.App.2010). "General principles of contract interpretation apply to insurance policies." *Lobeck v. State Farm Mut. Auto. Ins. Co.*, 582 N.W.2d 246, 249 (Minn.1998). Unambiguous language must be given its plain and ordinary meaning, and any ambiguity in a policy must be construed in favor of the insured. *Henning Nelson Constr. Co. v. Fireman's Fund Am. Life Ins. Co.*, 383 N.W.2d 645, 652 (Minn.1986).

It is undisputed that appellants' roofs are damaged and that the policy covers storm-related damage. Following the storm, the roofs were pulled away from their supportive beams, the trusses and truss supports were damaged and broken, and the roof seams were separated. But the parties dispute whether the damage was caused by inadequate maintenance or the storm.

Whether an appraisal is necessary pursuant to the policy depends on how we characterize the disputed issue and the phrase "amount of loss" in the appraisal clause. If the disputed issue is how much

of the total claimed damage was caused by the storm, then, as the insurer contends, an appraisal is necessary to determine the factual issue of the amount of storm-related loss. But if the issue is whether the claimed damage is covered by the policy, which also may include a causation question, then the legal issues of coverage and liability must be submitted to the district court.

The insureds contend that causation questions, such as whether damage was caused by a covered peril, are inherently questions of coverage, and the district court erred by characterizing this as a question of the amount subject to appraisal. They argue that respondent has not admitted coverage as to the three roofs, and that appraisers are not qualified to determine liability. Respondent insurer takes the position that the damage to the contested buildings is not covered because the entirety of the loss to those buildings is attributable to lack of maintenance and deterioration over time and the policy excludes "loss to property caused by ... maintenance." Respondent contends that it accepted liability for storm-related damage, but merely disputes whether the storm damage extends to the roofs in question, presenting questions as to the cause of the loss, appropriately reserved for appraisal. The district court agreed, and held that the insurer never denied liability for the storm loss, but merely argued that the storm did not damage the roofs.

 Under Minnesota law, it is well established that liability determinations are made by courts, not appraisers. *Mork v. Eureka–Security Fire & Marine Ins. Co.*, 230 Minn. 382, 384, 42 N.W.2d 33, 35 (1950); *Itasca Paper Co. v. Niagara Fire Ins. Co.*, 175 Minn. 73, 78–79, 220 N.W. 425, 427 (1928); *Johnson v. Mut. Serv. Cas. Ins. Co.*, 732 N.W.2d 340, 346 (Minn.

App.2007), *review denied* (Minn. Aug. 21, 2007). Despite these precedents, we recently observed that Minnesota courts have not addressed whether "an appraisal for valuation may include some consideration of underlying liability, as long as it does not constitute a determination of coverage." *QBE*, 778 N.W.2d at 399 (noting clear delineation in Minnesota law between valuation issues, which are decided by appraisers, and coverage issues, which are decided by courts).

Other jurisdictions have distinguished an appraisal for "amount of loss," which may include considerations of causation or liability when the insurer has admitted some covered loss, from the determination of an insured's right to recover, which may not be decided by appraisers. *See Rogers v. State Farm Fire & Cas. Co.*, 984 So.2d 382, 392 (Ala.2007) (holding that contract language referring to "amount of loss" authorized appraiser only to place dollar value on loss and not to determine cause of damage or other coverage issues); *Jefferson Ins. Co. v. Superior Court of Alameda Cnty.*, 3 Cal.3d 398, 90 Cal.Rptr. 608, 475 P.2d 880, 883 (1970) (interpreting "actual cash value" of the amount of loss to mean that appraisers could determine amount of damage relating to items submitted for their consideration but not decide coverage or policy interpretation questions); *Kendall Lakes Townhomes Developers, Inc. v. Agric. Excess & Surplus Lines Ins. Co.*, 916 So.2d 12, 16 (Fla.Dist.Ct.App.2005) (permitting "appraisal panel to decide causation issues when causation is not a coverage question, but rather an amount-of-loss question"); *Kawa v. Nationwide Mut. Fire Ins. Co.*, 174 Misc.2d 407, 664 N.Y.S.2d 430, 431 (N.Y.Sup.Ct.1997) ("[An] appraisal clause only applies to a case with a disagreement as to the amount of loss or damage, and not where the insurer denies liability." (internal quotations omitted));

*Merrimack Mut. Fire Ins. Co. v. Batts,* 59 S.W.3d 142, 149 (Tenn.Ct.App.2001) (interpreting amount of loss language to authorize appraiser to value only property loss and not to resolve insurer's liability under policy); *Johnson v. State Farm Lloyds,* 204 S.W.3d 897, 903 (Tex.App.2006) (stating that "if the parties agree there is coverage but disagree on the extent of damage, the dispute concerns the 'amount of loss' and that issue is determined in accordance with the appraisal clause"), *aff'd,* 290 S.W.3d 886 (Tex.2009).

▇ Respondent suggests that this dispute is free of legal issues, and therefore questions of causation may be entirely resolved by a factual determination of the amount of the damage that is attributable to the storm. In support, the insurer relies on decisions in other jurisdictions holding that an appraiser's assessment of the "amount of loss" necessarily includes a determination of the cause of loss. *See CIGNA Ins. Co. v. Didimoi Prop. Holdings, N.V.,* 110 F.Supp.2d 259, 268 (D.Del. 2000) ("[U]nder the circumstances of this case ... a determination of amount of loss under the appraisal clause includes a determination of causation. Coverage questions, such as whether damage is excluded for reasons beyond fire damage, are legal questions for the [c]ourt as this case progresses. However, the [c]ourt believes that whether a particular item was damaged as a result of fire or firefighting efforts is appropriately reserved for the appraisal process."); *Johnson v. Nationwide Mut. Ins. Co.,* 828 So.2d 1021, 1025 (Fla.2002) ("[W]hen the insurer admits that there *is* a covered loss, but there is a disagreement on the *amount* of loss, it is for the appraisers to arrive at the amount to be paid."); *Kendall Lakes,* 916 So.2d at 16 ("[B]ecause the insurer has not wholly denied that there is a covered loss, causation is an amount-of-loss question for the appraisal

panel, not a coverage question that can only be decided by the trial court." (quotations omitted)).

Neither the district court nor respondent identifies a fact question free of confusion with regard to legal issues such that if an appraisal occurred, the appraiser would not have to engage in assessing the law and interpreting the policy. In the instant case, questions of fact regarding the effects of a storm and the effects of faulty maintenance are entangled with questions of law respecting the meaning of the contract, the interplay of coverage and exclusions, shifting burdens of proof, and causation, which must be addressed as a matter of law. Determining coverage, causation, and the operation of the exclusion provision requires the attention of the court in a fashion normal for causation questions.

We observe that in all of the cases relied on by respondent, the insurer admitted some liability for the loss and the dispute concerned how much of the loss was caused by a covered peril. In the instant case, respondent takes the position that the maintenance exclusion applies to such an extent that it completely eliminates coverage. This is a complete denial of liability for the damage to the roofs, not a dispute as to the mere value or amount of the loss. Because this dispute goes to whether the loss suffered by appellants is covered by the policy, it can be resolved only by analysis and application of the policy by the district court.

Respondent contends that it has accepted liability by admitting that part of appellants' claim for storm damage was caused by a covered peril, and merely disagrees with appellants on the amount of the total loss that is storm related. But the portions of the claim for which respondent accepted liability do not involve damage caused by both the storm and by lack of

maintenance. Respondent fails to articulate any purely factual questions with respect to buildings for which the cause of the damage is not solely storm-related.

The parties' dispute concerns whether the roof damage is excluded by the policy, and this is a matter for the district court to determine. We reverse the district court's order that dismisses the complaint and orders an appraisal determination. The matter is remanded for determination of the claims in the case.

In light of our decision that the parties' dispute will not be resolved by an appraisal proceeding, we need not decide, as appellants assert, whether the district court erred by observing that the appraisal process would be subject to the statutes governing confirmation or vacation of an arbitration award.

■ Nonetheless, pertinent to our holding in this case, we take the opportunity to acknowledge that although some arbitration standards apply in processing appraisal results, Minnesota recognizes a distinction between appraisal and arbitration. *Compare QBE*, 778 N.W.2d at 398 (stating that "[a]ppraisal decisions are subject to Minn.Stat. § [§ ] 572.08–.30 (2008), the arbitration statute") *and David A. Brooks Enters., Inc. v. First Sys. Agencies*, 370 N.W.2d 434, 435 (Minn.App.1985) (holding that Minnesota's arbitration statutes govern appraiser decisions and appraisal awards are to be treated as arbitration awards) *with Johnson*, 732 N.W.2d at 346

(holding that an appraisal provision is not, in actuality, an agreement to arbitrate governed by the Uniform Arbitration Act). Arbitrators are empowered to determine not only issues of fact, but also questions of law. In contrast, appraisers do not determine liability; rather, they make valuation determinations. *See Johnson*, 732 N.W.2d at 346 ("It is well settled that appraisal does not determine liability under a policy. Liability depends on a judicial determination."); *see also Mork*, 230 Minn. at 384, 42 N.W.2d at 35 (holding that appraisers' finding that loss was not covered under the policy was a decision on a question of law not within the province of the appraisers). Appraisal proceedings, and the appraiser's task, are distinct in this sense from arbitration proceedings and decision-making.

## DECISION

Because the resolution of appellants' claim requires the determination of legal questions concerning the meaning and application of contract clauses, causation, and liability, the district court erred by granting summary judgment and ordering the parties to submit the dispute to appraisal.

**Reversed and remanded.**