AUTO–OWNERS INSURANCE
COMPANY, Appellant,

v.

SECOND CHANCE INVESTMENTS,
LLC, Respondent.

No. A11–1145.

Court of Appeals of Minnesota.

March 26, 2012.

Review Granted May 30, 2012.

Joseph F. Lulic, Charles M. Austinson, Hanson, Lulic & Krall, LLC, Minneapolis, MN, for appellant.

Michael R. Moline, Monroe Moxness Berg, PA, Minneapolis, MN; and Jenneane L. Jansen, Kris E. Palmer, Jansen & Palmer, LLC, Minneapolis, MN, for respondent.

Considered and decided by KALITOWSKI, Presiding Judge; SCHELLHAS, Judge; and BJORKMAN, Judge.

## OPINION

KALITOWSKI, Judge.

In this dispute regarding a valued fire-insurance policy, appellant Auto–Owners

Insurance Company contends that the district court erred in denying its motion to compel respondent Second Chance Investments LLC to submit the determination as to whether the insured property suffered a total loss to an appraisal panel.

## FACTS

Second Chance purchased residential real property in Minnetrista, Minnesota, and obtained fire insurance on the property from Auto–Owners. Consistent with Minnesota's standard fire insurance policy, the Auto–Owners policy provided for payment of the policy limits of $2,095,500 in the event of a total loss. *See* Minn.Stat. § 65A.01, subd. 3.

On November 11, 2008, the property caught fire. Certain areas of the residence were charred and burned, and other areas were completely destroyed. Second Chance filed a proof of loss with Auto–Owners, claiming that the loss was total and asserting that it was entitled to payment of the policy limits. Auto–Owners admitted that the damage was covered by the policy, but denied that the loss was total and paid Second Chance less than the policy limits.

On October 29, 2009, Auto–Owners notified Second Chance that it was demanding appraisal, pursuant to the policy appraisal provision, to resolve "the scope of the damage and the amount of the loss." Second Chance contended that appraisal was inappropriate because a total loss occurred, but preserved its right to appoint an appraiser. A neutral umpire was selected and an appraisal was scheduled for February 25, 2010.

On February 24, 2010, Auto–Owners notified Second Chance that it would not proceed with the appraisal if the appraisal panel's determination as to whether a total loss occurred would not be binding on both parties. Second Chance responded that the appraisal panel did not have the authority to conclusively decide the total-loss issue. Because of the parties' disagreement, the appraisal was continued.

On June 24, 2010, Auto–Owners filed a complaint in district court seeking a declaration that all issues be submitted to appraisal, including the determination as to whether the property suffered a total loss. Auto–Owners filed a motion to compel appraisal and Second Chance filed a motion for partial summary judgment on the total-loss issue. The district court denied the Auto–Owners motion to compel appraisal, concluded that genuine issues of material fact precluded summary judgment in favor of Second Chance, and ordered that the issue of whether the property suffered a total loss be submitted to a jury. Because it denied the Auto–Owners motion to compel appraisal, the district court dismissed the Auto–Owners complaint.

## ISSUE

Did the district court err by denying the Auto–Owners motion to compel appraisal to determine whether the fire resulted in a total loss?

## ANALYSIS

The interpretation and construction of statutes and insurance policies are legal issues reviewed de novo. *W. Nat'l Ins. Co. v. Thompson,* 797 N.W.2d 201, 205 (Minn. 2011). When interpreting statutes, our primary goal is to effectuate the intent of the legislature. Minn.Stat. § 645.16 (2010). We interpret statutes and insurance policies in accordance with their plain language. *Id.; Travertine Corp. v. Lexington–Silverwood,* 683 N.W.2d 267, 271 (Minn.2004); *Canadian Universal Ins. Co. v. Fire Watch, Inc.,* 258 N.W.2d 570, 572 (Minn.1977).

**Minnesota standard fire insurance policy**

Fire insurance in Minnesota is regulated primarily by statute. *White v. N.H. Ins. Co.*, 390 N.W.2d 313, 314 (Minn.App.1986), *review denied* (Minn. Aug. 27, 1986); *see* Minn.Stat. §§ 65A.01–.15 (2010). Section 65A.01, designated as the "Minnesota standard fire insurance policy," sets forth policy provisions and mandates that all such policies "provide the specified coverage and conform as to all provisions, stipulations, and conditions, with such form of policy." Minn.Stat. § 65A.01, subds. 1, 3.

The fire-insurance provisions of chapter 65A are considered a "valued policy law" because they require that "the insurer ... pay the whole amount mentioned in the policy ... in case of total loss." Minn. Stat. § 65A.08, subd. 2(a); *White*, 390 N.W.2d at 315 (referring to sections 65A.01 and 65A.08 as a "valued policy law"). Section 65A.01 further provides that insurers are prohibited from attaching provisions to their policies that limit the amount to be paid in the case of a total loss on buildings by fire to less than the stated amount of insurance. Minn.Stat. § 65A.01, subd. 5. Consistent with Minnesota law, the Auto–Owners policy at issue provides that "[i]n the event of a total loss ... [Auto–Owners] will pay an amount equal to the limit of insurance stated in the Declarations." Additionally, as required by law, the Auto–Owners policy makes the deductible inapplicable in the event of a total loss.

■ "The basic principle of a 'valued policy' statute is that the parties to a fire insurance contract agree in advance on a valuation of the property to be insured, and, in the absence of fraud, this valuation is binding and not subject to judicial inquiry." *Nathan v. St. Paul Mut. Ins. Co.*, 243 Minn. 430, 433, 68 N.W.2d 385, 388 (1955). "[T]he purpose of valued policy statutes is twofold: (1)[t]o prevent overinsurance by requiring prior valuation; and (2) to avoid litigation by prescribing definite standards of recovery in case of total loss." *Id.* at 433–34, 68 N.W.2d at 388.

Because the Minnesota standard fire insurance policy is a valued policy, certain loss-valuation provisions are inapplicable in cases of total loss. First, in instances of "total loss on buildings," the insured need not state the value of the property in a notice of loss. Minn.Stat. § 65A.01, subd. 3. Second, "[t]he amount of said loss or damage, except in case of total loss on buildings, [is] ... estimated according to the actual value of the insured property at the time when such loss or damage happens." *Id.* And third, section 65A.01 includes an appraisal provision for the resolution of loss-valuation disputes, but the appraisal provision is inapplicable "in case of total loss on buildings." *Id.* Consistent with the statute, the Auto–Owners policy states:

> If you and we fail to agree on the actual cash value or amount of loss, *except in the case of total loss to the dwelling* ... either party may make a written demand for appraisal. Each party will select an appraiser.... The appraisers will select a competent and impartial umpire.... The appraisers shall then appraise the loss, stating separately the actual cash value and loss to each item. .... If they cannot agree, they will submit their differences to the umpire. A written award by two will determine the actual cash value or amount of loss.

(Emphasis added.)

■ We conclude that the "except in case of total loss" language in the appraisal provisions in section 65A.01, subdivision 3, and in the policy is intended to prevent the parties from asserting an amount of loss that is lower or higher than the policy

limits in cases of total loss. *See Nathan,* 243 Minn. at 433, 68 N.W.2d at 388. If a total loss occurs, there is no need for an appraisal because the dollar amount of the loss is predetermined. *See Nw. Mut. Life Ins. Co. v. Rochester German Ins. Co.,* 85 Minn. 48, 53, 88 N.W. 265, 267 (1901) ("[I]f the loss occasioned by the fire were total, the stipulated value put an end to any inquiry as to the amount of the loss."). The appraisal-provision language dictates that appraisal is inappropriate in cases of total loss, but does not specify whether an appraisal proceeding or a court is the appropriate forum to decide whether there has been a total loss.

### Total loss definition

■ "Total loss" is not defined in section 65A.01 or the Auto–Owners policy, but is defined by common law:

> A building is not a total loss, . . . unless it has been so far destroyed by the fire that no substantial part or portion of it above ground remains in place capable of being safely utilized in restoring the building to the condition in which it was before the fire. . . . There can be no total loss of a building so long as the remnant of the structure left standing above ground is reasonably and safely adapted for use (without being taken down) as a basis upon which to restore the building to the condition in which it was immediately before the fire; and whether it is so adapted depends upon the question whether a reasonably prudent owner of the building, uninsured, desiring such a structure as the one in question was before the fire, would, in proceeding to restore the building, utilize such standing remnant as such basis. If he would, then the loss is not total.
>
> . . . .
>
> If, however, no part of the building remains which can be utilized, then the destruction is complete, and the loss total, and there is no call for arbitration. Where the line is to be drawn between these two conditions is, in each particular case, a question of fact. The question, being one of fact, must be determined by the same test applicable to other cases where it is necessary to adopt a standard of human conduct, and that is, what would a prudent person do under such circumstances?

*Nw. Mut. Life Ins. Co.,* 85 Minn. at 52, 62, 88 N.W. at 267, 270–71 (quotations omitted). The issue here is whether a court or an appraisal panel is to apply this definition under a valued fire-insurance policy.

### Scope of appraisal

The parties dispute whether a determination as to whether there has been a total loss is within the scope of an appraisal panel's authority. We construe the language of the appraisal provisions in accordance with "its usual and accepted meaning." *Wanzek Constr., Inc. v. Emp'rs Ins. of Wausau,* 679 N.W.2d 322, 324 (Minn. 2004) (quotation omitted).

It is well established that "[a]ppraisal is a non-judicial method to resolve disputes over the amount of a loss." *Johnson v. Mut. Serv. Cas. Ins. Co.,* 732 N.W.2d 340, 342 (Minn.App.2007), *review denied* (Minn. Aug. 21, 2007); *see also State Farm Lloyds v. Johnson,* 290 S.W.3d 886, 889–90 (Tex.2009) (stating that the scope of appraisal has historically been limited to determining the amount of damages). "Appraisal" is generally defined as "[t]he determination of what constitutes a fair price; valuation; estimation of worth." *Black's Law Dictionary* (9th ed.2009). Pursuant to Minn.Stat. § 65A.01, subd. 3, and the policy, appraisers determine the actual cash value or amount of loss by "stating separately actual value and loss to each item."

■ Appraisers do not have the authority to determine liability under an insurance policy. *Mork v. Eureka–Sec. Fire & Marine Ins. Co.*, 230 Minn. 382, 384, 42 N.W.2d 33, 35 (1950); *QBE Ins. Corp. v. Twin Homes of French Ridge Homeowners Ass'n*, 778 N.W.2d 393, 399 (Minn. App.2010); *Johnson*, 732 N.W.2d at 346. This court has explained that appraisal proceedings and the appraisers' task are distinct from judicial and arbitration proceedings, because appraisers "make valuation determinations," but are not empowered to decide questions of law. *Quade v. Secura Ins.*, 792 N.W.2d 478, 483 (Minn. App.2011), *review granted* (Minn. Mar. 29, 2011).

### Minnesota precedent

Minnesota courts have not addressed whether an appraisal proceeding or a court is the appropriate forum for the determination as to whether property suffered a total loss. *See QBE Ins. Corp.*, 778 N.W.2d at 399 (noting that "the analysis of Minnesota cases does not extend beyond delineating that valuation issues are to be decided by appraisers and coverage issues are to be decided by courts"). Second Chance argues that precedent demonstrates that the total-loss issue must be judicially determined. *See Oppenheim v. Fireman's Fund Ins. Co.*, 119 Minn. 417, 421–22, 425, 138 N.W. 777, 779, 781 (1912) (reversing a directed verdict on the total-loss issue and ordering a new trial); *Nw. Mut. Life Ins. Co.*, 85 Minn. at 62–63, 88 N.W. at 270–71 (holding that the total-loss issue is a question of fact, and ordering a new trial because the jury instructions did not follow the correct total-loss standard). Second Chance emphasizes that these cases were remanded for new trials, rather than appraisals. But because the record does not indicate that the parties in *Northwestern Mutual* or *Oppenheim* demanded appraisal of the total-loss issue, these

cases are not controlling on the forum question here.

Auto–Owners contends that total loss is a question of fact that may be submitted to appraisal, because *QBE* and *Quade* hold that factual questions going to the amount of loss are properly decided by an appraisal panel. *See Quade*, 792 N.W.2d at 480–81; *QBE*, 778 N.W.2d at 398–99. But these cases do not hold that an appraisal panel has the authority to decide *all* questions of fact. The factual questions at issue in *QBE* concerned the dollar value of the loss, that is, "the amount that would need to be expended" to repair the property damage. 778 N.W.2d at 398. This court concluded that the appraisal panel "was authorized to decide valuation questions," and "decided only that issue by arriving at a dollar figure representing the value of the loss." *Id.* at 399. And in *Quade*, we held that a determination of causation "requires the attention of the court in a fashion normal for causation questions." *Quade*, 792 N.W.2d at 482. This court described the distinction between factual "amount of loss" questions that may be submitted to appraisal, and legal liability questions that must be resolved by a court, and determined that the fact questions at issue were entangled with questions of law. *Id.* at 480–81. Because it was unnecessary to the holding, *Quade* did not address the types of factual questions that may be submitted to appraisal.

■ Here, unlike the amount-of-loss dispute in *QBE*, the total-loss determination is not limited to valuation of the loss, the cost of repair, or other numerical findings. Total loss cannot be determined solely by appraisers "stating separately actual value and loss to each item." Minn.Stat. § 65A.01, subd. 3. Instead, total loss must be analyzed under the *Northwestern Mutual* common-law standard, which involves

consideration of "whether a reasonably prudent owner of the building, uninsured, desiring such a structure as the one in question was before the fire, would, in proceeding to restore the building, utilize [the] standing remnant as such basis." 85 Minn. at 52, 88 N.W. at 267. And although the total-loss prudent-person analysis generally may include consideration of the cost to repair, it is not so limited. Accordingly, the total-loss determination is distinguishable from a factual amount-of-loss dispute appropriately submitted to appraisal.

### Prevailing rule

The prevailing rule is that "the sole purpose of an appraisal is to determine the amount of damage." 15 Lee R. Russ & Thomas F. Segalla, *Couch on Insurance 3d*, § 210:42 (2005). "As a consequence, an appraisal clause does not permit appraisers to determine whether a loss was, in fact, total." *Id.* And courts in foreign jurisdictions have held that an appraisal panel does not have the authority to conclusively decide the total-loss issue under a valued policy. *See Franklin Fire Ins. Co. v. Brewer*, 173 Miss. 317, 159 So. 545, 547 (1935) (holding that, under a valued fire-insurance policy, an appraisal award of less than the policy limits does not prevent the insured from bringing a suit asserting total loss, "but only fix[es] the amount of recovery thereunder in the event the loss was partial"); *Lee v. Hamilton Fire Ins. Co.*, 251 N.Y. 230, 167 N.E. 426, 427 (1929) (holding that, under a valued policy, "[a]n appraisal clause does not permit appraisers to determine whether a loss was in fact total, as an appraisal is to determine the amount of damage only"); *Penn. Fire Ins. Co. v. Drackett*, 63 Ohio St. 41, 57 N.E. 962, 963 (1900) (holding that, under a valued fire insurance policy, an arbitration award does not preclude the insured from bringing a suit alleging a total loss, and if the insured establishes that a total loss occurred, the insured "is entitled to recover the full amount of the policy, notwithstanding the award of the arbitrators was to the contrary"); *Seyk v. Millers' Nat'l Ins. Co.*, 74 Wis. 67, 41 N.W. 443, 445 (1889) (holding that an appraisal panel's valuation of loss at less than the policy limits is superseded by the jury's determination that a total loss occurred when the policy and a statute mandated the payment of policy limits in cases of a total loss).

Auto–Owners contends that we should follow foreign authority to the contrary. But the policies at issue in the cases cited by Auto–Owners are not valued policies and those cases are, therefore, distinguishable. *See Williamson v. Liverpool & London & Globe Ins. Co.*, 122 F. 59, 60, 62 (8th Cir.1903) (noting that the policy provided that the insurer "shall not be liable beyond the actual cash value of the property at the time any loss or damage occurs," and the parties' stipulation to arbitration provided that the arbitrators were to determine "the actual cash value immediately preceding the fire if it was total"); *Gouin v. Nw. Nat'l Ins. Co. of Milwaukee*, 145 Wash. 199, 259 P. 387, 388 (1927) (noting that the policy provided that the insurer "should not be liable beyond the actual cash value of the property at the time any loss or damage occurred").

■ We agree with the reasoning behind the prevailing rule. By adopting the Minnesota standard fire insurance policy, the legislature has explicitly determined that insureds suffering a total loss caused by fire are entitled to the policy limits they contracted for, and need not submit to an appraisal. The statutory appraisal procedure and the appraisers' authority to compute damages are inconsistent with the common-law total-loss standard. Because the determination of whether a total loss

occurred requires interpretation and application of common-law legal standards that are broader than loss valuation, it is beyond the scope of an appraisal. We conclude that a court, rather than an appraisal proceeding, is the appropriate forum for the total-loss determination.

**Right to appraisal**

Finally, Auto–Owners argues that judicial determination of the total-loss issue deprives it of its contractual and statutory right to an appraisal. We disagree. Here, if the jury concludes that the damage to Second Chance's property does not constitute a total loss, the parties may submit any dispute as to the actual cash value of the loss to appraisal, consistent with Minn.Stat. § 65A.01, subd. 3, and the policy.

## DECISION

We conclude that, under Minn.Stat. § 65A.01, subd. 3, and a valued fire-insurance policy, the determination as to whether fire damage caused a total loss is beyond the scope of an appraisal panel's authority. Accordingly, the district court did not err by determining that the district court, rather than an appraisal proceeding, was the appropriate forum to determine whether the property suffered a total loss.

**Affirmed.**