OPINION OF THE COURT
Thomas P. Flaherty, J.
Plaintiffs had property coverage for their home with the defendant insurer. Their residence was damaged in a windstorm in February of 1997, including damage to the aluminum siding.
Following an inspection of the subject premises the defendant tendered a settlement offer for repairs. Maintaining that the policy required defendant to replace all of their aluminum siding with new vinyl siding, plaintiffs rejected the offer and demanded that their loss be submitted to appraisal pursuant to the policy and Insurance Law § 3404. Under the appraisal *408 procedure each side selects an appraiser, who in turn select an impartial umpire. If the appraisers fail to agree on the amount of loss, they submit their differences to the umpire, with the written agreement of any two of these three setting the amount of the loss.
Defendant denied plaintiffs’ request to submit the matter to appraisal, maintaining that there was a legal dispute presented, not merely a question as to the value of the loss sustained.
The instant declaratory judgment action was commenced wherein the plaintiffs maintain this dispute should be resolved via appraisal and the defendant maintains that it is not required to submit this dispute to appraisal. Both sides-now move for summary judgment. Those motions are granted to the extent that it is declared that defendant is not required to submit this dispute to appraisal.
The parties agree that the fundamental question presented is whether their dispute constitutes a question of coverage or a question as to the amount of the loss. As the court held in Maimes v Automobile Ins. Co. (112 Misc 656, 657 [Sup Ct, Monroe County 1920], affd 196 App Div 921), the appraisal clause only applies to a case with a disagreement " 'as to the amount of loss or damage’ ”, and not where the insurer denies liability. Based upon the submissions hereon, this court concludes that defendant contests liability and is not merely disagreeing as to the value of the loss. In reaching this conclusion the court notes that the September 11, 1997 affidavit of defendant’s claims adjuster Cheryl Jaeckle clearly raises a question as to liability. She opines that the condition of the house siding she observed was "the result of age, wear and tear and/or poor or improper maintenance” and that the face nailing she observed "was the result of prior efforts to repair the aluminum siding, and was not the result of Mr. Kawa’s actions 'during the windstorm’ ”. (Para 5.) Similar claims are made in the September 11, 1997 affidavit of John M. Giacomoni, who inspected the subject premises for defendant.
The defendant maintains that the policy requires it to indemnify plaintiffs in a manner which will return their home to its pre-1997 windstorm condition. Defendant asserts it need only repair the damage done. Plaintiffs claim that the policy requires replacement of the entire damaged aluminum siding with new vinyl siding. Defendant contends that this dispute goes to coverage under the policy and can only be resolved by analysis and application of the policy. This court agrees.
*409 As Missouri’s Supreme Court held in Hawkinson Tread Tire Serv. Co. v Indiana Lumbermens Mut. Ins. Co. (362 Mo 823, 830, 245 SW2d 24, 28 [1951]), "It is essential that the legal contentions of the parties be resolved in order to make correct computations in a determination of the actual loss sustained. Actually the controversy and disagreement relate to defendant’s liability (or, more accurately, the extent of its liability).” In Hawkinson the parties disagreed as to the length of time for which the policy covered business interruption and whether or not a particular employee was "important employee” as defined in the insurance policy. That court found that the resulting differences as to the amount of loss "was incidental to the actual underlying (legal) controversy between the parties as to the meaning of the insurance contract and its application to the facts.” (362 Mo, at 830, 245 SW2d, at 28.) The case at bar presents a similar scenario.
Plaintiffs cite Florida Farm Bur. Cas. Ins. Co. v Sheaffer (687 So 2d 1331 [Fla Dist Ct App 1977]) wherein a dispute very similar to the one at bar arose between property owners and their casualty insurer. That court found the dispute concerned only the amount of loss and did not involve a "coverage” question. Specifically, the court held that "[w]here the amount owed on a claim, arguably within the policy coverage, is dependent on the resolution of disputed issues of fact and the application of policy language to those facts * * * the extent of the claim does not constitute a 'coverage’ question.” (Supra, at 1334.)
This court declines to adopt the conclusion of the Florida Farm Bur. court (supra), finding the reasoning of the Missouri court in Hawkinson (supra) more compelling.
Additionally, in Florida Farm Bur. (supra) the court treated the appraisal provision as an arbitration agreement. The court specifically held that "the nature of the appraisers’ duties will require the exercise of quasi-judicial authority to resolve the dispute.” (Supra, at 1334.) Plaintiffs present no New York authority which equates appraisal with arbitration or which grants quasi-judicial authority to appraisers. To the contrary, New York recognizes a clear distinction between appraisal and arbitration (Matter of Delmar Box Co., 309 NY 60; Syracuse Sav. Bank v Yorkshire Ins. Co., 301 NY 403, 410, 411). In New York, arbitration, a more formal proceeding, ordinarily encompasses the disposition of the entire controversy while appraisal extends merely to the specific issues of cash value and the *410 amount of loss, leaving all other issues for determination in a plenary action (Matter of Delmar Box Co., supra, at 63).
Submit judgment accordingly, without costs.