OPINION OF THE COURT
Phillip R. Rumsey, J.
*776 Petitioner was insured by a homeowner’s insurance policy issued by respondent for the period during which his property was damaged by vandalism on November 18, 2014. Specifically, upon returning from a weekend trip to New York City, he discovered that vulgarities had been written in black spray-paint in numerous locations within and without his home. He reported the loss to respondent in December 2014, and respondent performed an inspection and took numerous photographs of the damage on December 23, 2014. Petitioner thereafter engaged a public adjusting firm, National Fire Adjustment Co., Inc. (NFA), and respondent obtained a repair estimate from Zimmerman Construction. In summary, petitioner claims, based on NFA’s estimate, that the actual cash value of his loss was $81,869.63. Respondent claims that the actual cash value of the loss was $37,986.30 and tendered payment of $36,986.30 (its estimate of the actual cash value of petitioner’s loss, less a $1,000 deductible). On March 18, 2016, petitioner demanded an appraisal, pursuant to the policy. By letter dated April 5, 2016, respondent advised that it would not participate in the appraisal process, contending that there was a dispute regarding the scope of coverage, and not just the scope of damages sustained. Petitioner then commenced this proceeding, pursuant to Insurance Law § 3408 (c), seeking an order compelling an appraisal.
Respondent’s argument that the petition must be dismissed because it is not properly verified or supported with affidavits is unavailing. The petition states the necessary elements of a demand for appraisal, namely, (1) the existence of a policy issued by the respondent insuring petitioner’s property which contains a provision for appraisal; (2) damage to the property covered by the policy; (3) submission of a claim arising from the loss; (3) the existence of a dispute between the parties regarding the value of the damages sustained; (4) petitioner’s demand for appraisal; and (5) respondent’s refusal to participate in the appraisal process. Further facts about the nature of the loss or any reasons provided by respondent for refusing to participate in the appraisal process are not part of petitioner’s prima facie case (see generally Hyman v State Farm Fire & Cas. Co., 2016 NY Slip Op 32700[U], *2 [Sup Ct, NY County 2016] [“neither the statute nor the policy obligates plaintiff to identify the specific items or areas of damage which form the basis of her disagreement with (the insurer)” when seeking an appraisal]). Respondent alleged facts about the loss and dispute regarding the extent of the loss, to which petitioner responded *777 by reply affidavit. Thus, the matter is properly before the court.[1]
“An appraisal shall determine the actual cash value, the replacement cost, the extent of the loss or damage and the amount of the loss or damage which shall be determined as specified in the policy and shall proceed pursuant to the terms of the applicable appraisal clause of the insurance policy and not as an arbitration. Notwithstanding the provisions of this subsection, an appraisal shall not determine whether the policy actually provides coverage for any portion of the claimed loss or damage.” (Insurance Law § 3408 [c].)
Respondent asserts that it has paid petitioner for all covered losses and that petitioner is seeking payment for replacement of the following various components of his home that did not sustain direct physical damage in the vandalism incident: a fireplace, siding for the entire garage, a bathroom and portions of the plumbing and electrical systems. Respondent characterizes its objections as constituting issues regarding the scope of coverage that may not be determined in an appraisal.
In reply, petitioner submits the affidavit from his adjuster who explains the basis for petitioner’s claims. With respect to each of respondent’s objections, the adjuster explains that petitioner seeks replacement as a means of effecting proper repairs to items that were indisputably damaged and asserts, therefore, that the dispute between the parties involves one of determining the extent and amount of loss. With respect to the fireplace, she notes that only the glass doors were damaged and explains that she included an estimate for replacement of the fireplace because she could not locate an exact match. With respect to the garage siding, she agrees that only one wall of the garage was vandalized and explains that she included an estimate for the garage siding on the remaining walls because it was not possible to purchase siding for installation on the vandalized wall that would match the faded color of the undamaged siding on the remaining walls. With respect to the bathroom and plumbing and electric fixtures, she asserts that they will be affected during the repair process.
*778 Notably, respondent has not denied liability for damages sustained in the vandalism incident and it does not identify any policy provisions that need to be interpreted by the court to resolve the parties’ dispute. Rather, it is clear from the parties’ respective submissions that the basis for respondent’s objections to an appraisal is limited to the extent of work required to repair the damage caused by the vandalism incident. Such disputes “are factual questions that fall squarely within the scope of the policy’s appraisal clause” (Quick Response Commercial Div., LLC v Cincinnati Ins. Co., 2015 WL 5306093, *3, 2015 US Dist LEXIS 120415, *8 [ND NY, Sept. 10, 2015, No. 1:14-cv-779 (GLS/DEP)] [citations omitted] [applying New York law]; see also Hyman, 2016 NY Slip Op 32700[U], *2, quoting Quick Response). Respondent cites Kawa v Nationwide Mut. Fire Ins. Co. (174 Misc 2d 407 [1997]) for the proposition that a dispute over whether it was necessary to repair or replace the house siding is one involving the scope of coverage. However, in Kawa, the fundamental dispute was not the extent of necessary repairs; rather, it was one of causation, namely, whether the condition of the aluminum siding on the home was a result of improper maintenance that had been performed prior to the windstprm incident, or whether it resulted from the insured’s efforts to secure the siding during the windstorm, and the court held that the issue of causation was incidental to an underlying legal controversy regarding the meaning of the policy and its application to the facts (see Kawa, 174 Misc 2d at 408-409).
In sum, issues of causation relate to the scope of coverage, which is not a proper subject for an appraisal, and issues regarding the extent of necessary repairs involve valuation of damages, which are properly submitted for an appraisal. This conclusion is supported by the persuasive and extensive analysis set forth in Lee v California Capital Ins. Co. (237 Cal App 4th 1154, 1170-1173, 188 Cal Rptr 3d 753, 764-767 [2015]), in which the court held, like the court in Kawa, that issues of causation are not properly submitted to appraisal because they involve the scope of coverage, while the issue of whether property was damaged at all is properly determined by the appraisers, because the scope of repairs made necessary by a covered loss, and the cost of any such repairs, directly bear upon the valuation of the loss.[2]
*779 Finally, respondent’s assertion that petitioner’s demand for an appraisal was untimely is unavailing. The right to an appraisal must be exercised within a reasonable period.
“In determining the timeliness of an appraisal demand, courts consider three factors: (1) whether the appraisal would result in prejudice to the insured party; (2) whether the parties engaged in good-faith negotiations over valuation of the loss prior to the appraisal demand; and (3) whether an appraisal is desirable or necessary under the circumstances.” (Zarour v Pacific Indem. Co., 113 F Supp 3d 711, 716 [SD NY 2015] [internal quotation marks omitted].)
Here, there is no apparent prejudice to respondent from compelling an appraisal, even if the property has been partially or completely repaired. Respondent had timely notice of the claim and the opportunity to inspect and photograph the property within approximately one month of the loss. Moreover, several repair estimates have been completed, and the parties have engaged in joint inspections of the property and negotiations regarding the loss.
. Based on the foregoing, the petition is granted. Respondent is ordered to select its appraiser and participate in the appraisal process in accordance with the policy. Respondent shall identify its appraiser within 20 days from the date of this decision, order and judgment (in accordance with the provision of the policy requiring a party to name its appraiser within 20 days after receipt of a demand for an appraisal).

. Insurance Law § 3408 provides that a petition seeking to compel an appraisal should be made in the county where the damaged property is or was located. Thus, this proceeding should have been commenced in Oswego County, where petitioner’s residence is located. However, any objection to improper venue was waived by respondent’s failure to serve a demand for change of venue (see CPLR 511 [a]).

. Pilkenton v New York Cent. Mut. Fire Ins. Co. (112 AD3d 1327 [2013]) does not compel a contrary result. In that case, an appraisal was denied on the basis that the scope of coverage was disputed; in fact, there was a declara *779 tory judgment action pending in which the parties disputed whether there was a covered loss.