18-1405-cv(L)
*Milligan v. CCC Info Services*

# UNITED STATES COURT OF APPEALS
## FOR THE SECOND CIRCUIT

August Term, 2018

Argued: March 8, 2019     Decided: April 3, 2019

Docket Nos. 18-1405-cv, 18-1407-cv

LORENA M. MILLIGAN, individually and on behalf of all others similarly situated,

*Plaintiff-Appellee,*

— v. —

CCC INFORMATION SERVICES INC.,

*Defendant-Appellant,*

GEICO GENERAL INSURANCE COMPANY,

*Defendant-Appellant.*

B e f o r e:

JACOBS and LYNCH, *Circuit Judges*, and VILARDO, *District Judge*.[*]

---

[*] Judge Lawrence J. Vilardo, of the United States District Court for the Western District of New York, sitting by designation.

Defendants-Appellants GEICO General Insurance Company ("GEICO") and CCC Information Services ("CCC") appeal from an order of the United States District Court for the Eastern District of New York (Azrack, *J.*), denying their motions to compel appraisal in a suit brought by Plaintiff-Appellee Lorena Milligan, a GEICO policyholder. GEICO argues that the district court erred in refusing to grant its motion to compel appraisal because Milligan's policy requires her to submit a dispute over the value of her loss to a panel of appraisers. CCC argues that the doctrine of equitable estoppel entitles it to compel Milligan to comply with the appraisal procedure in her policy. Both GEICO and CCC assert that we have jurisdiction over this interlocutory appeal pursuant to the Federal Arbitration Act, 9 U.S.C. §§ 1 *et seq.* The order of the district court is AFFIRMED.

KEITH ALTMAN, Excolo Law Group, Southfield, MI, (Ari Kresch, Excolo Law Group, Southfield, MI, Sharon S. Almonrode, Dennis A. Lienhardt, The Miller Law Firm, P.C., Rochester, MI, *on the brief*) *for Plaintiff-Appellee.*

KATHLEEN LALLY, Latham & Watkins LLP, Chicago, IL, (Mark S. Mester, Latham & Watkins LLP, Chicago, IL, Benjamin W. Snyder, Latham & Watkins LLP, Washington, DC, *on the brief*) *for Defendant-Appellant CCC Information Services Inc.*

MERRIL BISCONE, Rivkin Radler LLP, Uniondale, NY (Cheryl F. Korman, Rivkin Radler LLP, Uniondale, NY, *on the brief*) *for Defendant-Appellant GEICO General Insurance Company.*

GERARD E. LYNCH, *Circuit Judge*:

Lorena M. Milligan filed this putative class action in the United States District Court for the Eastern District of New York (Joan M. Azrack, *Judge*), asserting several causes of action against GEICO General Insurance Company ("GEICO"), with whom she had an insurance policy, and CCC Information Services ("CCC"), a GEICO contractor, relating to a claim she filed with GEICO following the total loss of her vehicle. GEICO and CCC both moved to compel Milligan to comply with a provision of her policy requiring her to submit disputes over the amount of loss to a panel of appraisers. Milligan opposed the motions, arguing that GEICO had not timely sought appraisal and that appraisal was inappropriate because her claims against the defendants concerned a legal dispute over the amount of coverage under her policy. The district court agreed with Milligan and denied the motions. For the reasons that follow, we AFFIRM the order of the district court.

## BACKGROUND

Milligan leased a 2015 Lexus automobile in March 2015. The lease agreement with Lexus Financial Services, the company from which she leased the Lexus, stated the purchase price of the car as $51,400. Milligan obtained an

insurance policy with GEICO (the "Policy") to cover bodily injury and property damage to the Lexus. Approximately two months after leasing the vehicle, Milligan was involved in a rollover accident that resulted in the Lexus being damaged beyond repair. Shortly thereafter, Milligan submitted a claim to GEICO. GEICO obtained a Market Valuation Report from CCC, which valued Milligan's vehicle at $45,924. GEICO paid Milligan's lienholder, Toyota Lease Trust, $45,924 on the claim.

On January 15, 2016, Milligan filed this putative class action complaint asserting claims against GEICO and CCC for breach of contract, negligence, unjust enrichment, and violations of New York insurance law, 11 NYCRR § 216.7 ("Regulation 64"), and New York General Business Law § 349 (which bans unfair and deceptive trade practices), seeking damages and declaratory and injunctive relief. The complaint invokes federal jurisdiction pursuant to the Class Action Fairness Act of 2005, 28 U.S.C. § 1332(d)(2).

The thrust of Milligan's complaint is that GEICO violated Regulation 64, a New York State insurance regulation that requires an insurer, in the case of a total loss of a current model year vehicle, to reimburse the owner for the

reasonable purchase price less any applicable deductible and depreciation allowances. As relevant herein, Regulation 64 states:

> A private passenger automobile of the current model year means a current model year automobile that has not been superseded in the marketplace by an officially introduced succeeding model, or an automobile of the previous model year purchased new within 90 days prior to the date of loss. If the insured vehicle is a private passenger automobile of the current model year, the insurer shall pay to the insured the reasonable purchase price to the insured on the date of loss of a new identical vehicle, less any applicable deductible and an allowance for depreciation in accordance with [a set schedule], except [under circumstances not relevant here].

11 NYCRR § 216.7(c)(3).

Milligan alleges that her vehicle was a "current model year" automobile as defined by Regulation 64. She contends, however, that rather than paying her the reasonable purchase price of a new identical vehicle on the date of loss less any applicable deductible and depreciation allowances, as required by Regulation 64, GEICO paid Milligan the amount contained in CCC's Market Valuation Report, which calculated her loss using the average of three similar dealer vehicles that were available or recently sold in the marketplace at the time of the valuation. Milligan's complaint sets forth class allegations suggesting that the practices alleged affected many GEICO insureds.

5

On March 8, 2016, GEICO's counsel communicated a demand for appraisal to Milligan's counsel pursuant to Section III of the Policy, which provides:

> APPRAISAL
>
> If we and the *insured* do not agree on the amount of *loss*, either may, within 60 days after proof of *loss* is filed, demand an appraisal of the *loss*. In that event, we and the *insured* will each select a competent appraiser. The appraiser will select a competent and disinterested umpire. The appraisers will state separately the *actual cash value* and the amount of the *loss*. If they fail to agree, they will submit the dispute to the umpire. An award in writing of any two will determine the amount of *loss*. We and the *insured* will each pay his chosen appraiser and will bear equally the other expenses of the appraisal and umpire.
>
> We will not waive our rights by any of our acts relating to appraisal.

App'x at 55. In the letter, GEICO demanded, *inter alia*, suspension of the instant lawsuit and the identification by Milligan of an appraiser to participate in the appraisal process.

Milligan's counsel promptly responded, asserting that the demand was untimely, citing correspondence with a GEICO claims representative dated July 21, 2015. The July 2015 communications make clear that by July 3, 2015, Milligan had already filed a claim with GEICO and GEICO had already paid $45,924 to Toyota Lease Trust. Milligan's counsel further disputed that the amount paid

6

was the correct amount owed under the Policy.

GEICO and CCC then moved to dismiss Milligan's complaint and to compel appraisal. The district court referred the motions to Magistrate Judge Gary R. Brown for a Report and Recommendation ("R&R"). At a conference and oral argument on the motions, Judge Brown explained that he would convert the appraisal portion of defendants' motions to motions for summary judgment so that he could rely on evidence extrinsic to the complaint to determine whether GEICO's demand for appraisal was timely. Judge Brown then issued an R&R that recommended granting in part and denying in part the defendants' motions to dismiss and denying the motion to compel appraisal. *See Milligan v. GEICO Gen. Ins. Co.*, CV 16-240 (JMA)(GRB), 2017 WL 9939046 (E.D.N.Y. July 14, 2017).

The R&R concluded that Milligan's breach of contract claim against GEICO was well pleaded. It explained that Milligan's allegations, as reasonably construed, are that GEICO calculated her loss with respect to the "adjusted vehicle value" or "market value" in lieu of the statutorily-required "reasonable purchase price" and that, as a result, GEICO failed to fully compensate Milligan for the true vehicle replacement value. The R&R recommended dismissing the breach of contract claim against CCC because CCC was not a signatory to the

7

Policy and Milligan did not otherwise have a contractual relationship with CCC.

The R&R also recommended dismissing Milligan's claim under Regulation 64 because that statute does not contain a private right of action, and her negligence claims against both GEICO and CCC because she failed to plead that either company owed her any duty in tort. However, the R&R recommended that Milligan's claim for deceptive business practices, pursuant to New York General Business Law § 349, proceed against both GEICO and CCC. It explained that "[t]aken together, [Milligan's] allegations describe a systematic scheme to deceive Plaintiff and members of the Class that failed to fully compensate them for the loss of their vehicles as required by Regulation 64 involving the underpayment of claims and provision of valuation reports intended to mislead the policy holder as to the actual amounts owed." *Milligan*, 2017 WL 9939046 at *8 (internal quotations omitted).

Finally, the R&R recommended that the district court deny GEICO's motion to compel appraisal. First, it held that the language of the appraisal provision, that either party "may . . . demand an appraisal," is permissive and thus voluntary. It also found that GEICO did not timely or properly commence the appraisal process. It noted that the Policy required a party seeking to compel

appraisal to demand an appraisal "within 60 days after proof of loss is filed."

Although the Policy does not define "proof of loss," the magistrate judge

deduced from the Policy's language that "proof of loss" means information

reasonably required to ascertain the loss. Rejecting GEICO's argument that the

complaint in this action constituted the only arguable proof of loss filed by

Milligan, the R&R concluded that the "indisputable facts give rise to the inference

that, however one might define a proof of loss under this particular policy,

plaintiff must have complied with this policy requirement [by July 2015] because

GEICO paid more than $45,000 as a result of the information provided by

plaintiff." *Id*. at *10. Thus, GEICO's March 6, 2016 demand for appraisal did not

satisfy its obligation to demand appraisal within 60 days of the proof of loss. The

R&R also suggested that appraisal was inappropriate in this case because the

appraisal sought would effectively constitute an opinion on the extent and nature

of the coverage provided under the Policy, and under New York law an

appraiser may not resolve legal questions regarding interpretation of the Policy.

The district court adopted the R&R in its entirety. *See Milligan v. GEICO Gen. Ins. Co.*, 16-CV-240 (JMA)(GRB), 2018 WL 3632690 (E.D.N.Y. Mar. 31, 2018). GEICO and CCC timely filed notices of appeal seeking this Court's review of the

9

district court's denial of their motions to compel appraisal.

## DISCUSSION

### I.  Appellate Jurisdiction

At the outset, we must assess our jurisdiction to entertain this interlocutory appeal. *See Goldberg v. Cablevision Sys. Corp.*, 261 F.3d 318, 323 (2d Cir. 2001). GEICO and CCC assert that we have appellate jurisdiction pursuant to the Federal Arbitration Act ("FAA"), 9 U.S.C. § 16(a)(1)(B), which permits an interlocutory appeal from a district court's denial of a motion to compel arbitration. They contend that the appraisal process set forth in the Policy constitutes arbitration within the meaning of the FAA and therefore that the denial of their motions to compel appraisal vests us with appellate jurisdiction.

The FAA does not define the term "arbitration." 9 U.S.C. § 1 *et seq.*; *see AMF Inc. v. Brunswick Corp.*, 621 F. Supp. 456, 460 (E.D.N.Y. 1985) ("The [FAA], adopted in 1925, made agreements to arbitrate enforceable without defining what they were."). To determine the meaning of arbitration under the FAA, we look to federal common law. *See Bakoss v. Certain Underwriters at Lloyds of London Issuing Certificate No. 0510135*, 707 F.3d 140, 143 (2d Cir. 2013) ("[F]ederal common law

10

provides the definition of 'arbitration' under the FAA.").[1]

In *McDonnell Douglas Finance Corp. v. Pennsylvania Power & Light Co.*, 858 F.2d 825, 830 (2d Cir. 1988), we explained that an enforceable arbitration clause in a contract is one "that clearly manifests an intention by the parties to submit certain disputes to a specified third party for binding resolution." We held that the parties' contractual agreement to submit disputes about the value of share prices to an independent tax counsel constituted an arbitration agreement within the meaning of the FAA, even though the contract language did not employ the word "arbitration." *Id*. We explained that "what is important is that the parties clearly intended to submit some disputes to their chosen instrument for the definitive settlement of certain grievances under the Agreement." *Id*. (internal quotations and alterations omitted).

We applied the same principle in *Bakoss*. 707 F.3d 140. In that case we were presented with a Certificate of Insurance ("COI"), which enabled the insured to recover if he became "Permanently Totally Disabled." *Id*. at 142. The COI provided each party with the right to have Bakoss examined by a physician of its

---

[1] Because federal common law provides the definition of "arbitration" under the FAA, Milligan's citations to cases defining arbitration under New York law are not instructive.

choice for the purpose of determining whether he was "totally disabled," and that in the event of a disagreement between the parties' physicians, those two physicians "shall [jointly] name a third Physician to make a decision on the matter which shall be final and binding." *Id*. We affirmed the district court's conclusion that this procedure constituted an arbitration within the meaning of the FAA because the parties agreed to submit medical disputes under the policy to "a third Physician who [would] make a final and binding decision." *Id*. at 143.[2]

Thus, the term "arbitrate" need not appear in the contract in order to invoke the benefits of the FAA. Similarly, it is not dispositive that an agreement fails to label the independent third party's conclusions "final" or "binding," so long as the parties' intent in that regard is clear from the language of their

---

[2] *See also Fit Tech, Inc. v. Bally Total Fitness Holding Corp.*, 374 F.3d 1, 5–7 (1st Cir. 2004) (exercising appellate jurisdiction under 9 U.S.C. § 16(a) where district court denied party's motion to compel an accounting remedy); *New River Management Co., LLC v. Henry Schein Inc.*, 9 F. App'x 232, 234–35 (4th Cir. 2001) (affirming district court decision concluding that contract clause referring certain disputes for resolution by an independent accountant is arbitration in the context of the FAA); *Cummings v. Consumer Budget Counseling, Inc.*, No. 11 Civ. 3989, 2012 WL 4328637, at *3 (E.D.N.Y. Sept. 19, 2012) (finding an agreement to "abide by the decision of the mediator" to constitute an agreement to arbitrate under the FAA, "notwithstanding the nomenclature used by the parties"); *AMF*, 621 F. Supp. at 460–61 (finding an agreement to submit disputes over advertising claims to the National Advertising Division of the Council of Better Business Bureaus an arbitration in the context of the FAA).

contract. *See McDonnell Douglas*, 858 F.2d at 831. A contractual provision that "clearly manifests an intention by the parties to submit certain disputes to a specified third party for binding resolution" is arbitration within the meaning of the FAA. *Id.* at 830.[3]

The appraisal process here constitutes arbitration for purposes of the FAA. The appraisal provision identifies a category of disputes (disagreements between the parties over "the amount of loss"), provides for submission of those disputes to specified third parties (namely, two appraisers and the jointly-selected

---

[3] *See also Liberty Mutual Grp., Inc. v. Wright,* No. DKC 12-0282, 2012 WL 718857, at *6 (D. Md. Mar. 5, 2012) (concluding that an entire appraisal process constitutes arbitration within the meaning of the FAA where the parties agreed to select a competent appraiser if they could not agree on the amount of the loss, and their agreement provided a fixed procedure for those appraisers to follow in setting the amount of the loss); *cf. Evanston Ins. Co. v. Cogswell Properties, LLC*, 683 F.3d 684, 693–94 (6th Cir. 2012) (holding appraisal process did not constitute arbitration under federal law where appraisal process did not provide for a final and binding remedy); *Advanced Bodycare Solutions, LLC v. Thione Int'l Inc.*, 524 F.3d 1235, 1238–40 (11th Cir. 2008) (concluding that mediation is not arbitration within the meaning of the FAA because it does not produce a final binding result); *Salt Lake Tribune Publishing Co., LLC v. Management Planning, Inc.*, 390 F.3d 684, 689–91 (10th Cir. 2004) (holding that an appraisal procedure did not constitute an arbitration because it did not "empower[] a third party to render a decision settling [the parties'] dispute"); *Harrison v. Nissan Motor Corp in USA*, 111 F.3d 343, 350–51 (3d Cir. 1997) (holding informal dispute resolution process was not arbitration in the context of the FAA where process was not guaranteed to be completed and result in binding resolution).

umpire), and makes the resolution by those third parties of the dispute binding (by stating that "[a]n award in writing of any two *will determine* the amount of the loss").[4]

Thus, because we have appellate jurisdiction over an order denying a motion to compel arbitration, 9 U.S.C. § 16(a)(1)(B), and the appraisal process in the Policy falls within the meaning of arbitration, we have jurisdiction over this appeal.[5]

## II.    Whether Appraisal Should Be Compelled

On *de novo* review, *see Katz v. Cellco P'ship*, 794 F.3d 341, 344 n. 4 (2d Cir. 2015), we affirm the district court's decision to deny appraisal.

In *Amerex Grp., Inc. v. Lexington Ins. Co.*, 678 F.3d 193, 204–05 (2d Cir. 2012)

---

[4] Contrary to the district court's conclusion, the appraisal process here is not voluntary. While the process need not be invoked by either the insured or insurer, either party may demand it; and once either does, appraisal is mandatory. That is clear from the language of the appraisal provision, which recites that if one party demands appraisal, "we and the **insured** will select a competent appraiser." App'x at 55. The use of the term "will" obligates each party to engage in the apprisal process by selecting a competent appraiser.

[5] Because the district court's rulings on the motions to dismiss various claims in the complaint are not "inextricably intertwined" with the arbitration order over which we have jurisdiction, *see Blue Ridge Investments, LLC v. Republic of Argentina*, 735 F.3d 72, 81 (2d Cir. 2013), we lack jurisdiction to review those rulings, and neither side asks us to do so.

we explained that an appraiser may not resolve coverage disputes raising legal questions about the interpretation of an insurance policy. That principle has been applied in several cases decided under New York law. In *Kawa v. Nationwide Mutual Fire Ins. Co.*, 174 Misc.2d 407 (N.Y. Sup. Ct. 1997), for example, the insured residence was damaged in a windstorm. *Id*. at 407. The defendant insurer contended that the relevant policy required that it indemnify the insured only in a manner that would return the residence to its pre-windstorm condition. *Id*. at 408. The insured claimed that the relevant policy required replacement of the entire damaged aluminum siding with new vinyl siding. *Id*. The court deemed this a dispute over the proper interpretation of the policy's coverage, which could be resolved only by the court's legal analysis. *Id*.

Similarly, in *Duane Reade, Inc. v. St. Paul Fire & Marine Ins. Co.*, 279 F. Supp. 2d 235, 241–42 (S.D.N.Y. 2003), *aff'd* 411 F.3d 384 (2d Cir. 2005), the district court reserved for itself how to interpret the term "Restoration Period" under a policy indemnifying Duane Reade for certain business income losses following the terrorist attacks of September 11, 2001. Duane Reade asserted a right to recover under the policy for business interruption losses for the entire period until the complex which would replace the World Trade Center was rebuilt. *Id*. at 238. The

15

insurer argued that the Restoration Period terminated when Duane Reade could have restored operations at locations other than the World Trade Center. *Id*. Holding that this was not a dispute to be resolved by appraisal, the district court decided as a matter of law that the Restoration Period ended when Duane Reade was able to resume operations in the location where its World Trade Center store once stood. *Id*. at 239.

An appraisal is appropriate not to resolve legal questions, but rather to address "factual disputes over the amount of loss for which an insurer is liable." *Amerex,* 678 F.3d at 204. In *Amerex*, we explained that an appraisal panel was authorized to resolve factual questions regarding claims about the conflicting causes of lost business income. *Id*. at 205–06. Amerex, the insured, had a clothing warehouse in New Jersey which flooded after a rack collapsed activating the warehouse's sprinkler system. *Id*. at 197. The flood damaged Amerex's merchandise and rendered its computer system inoperable for a period of time, which prevented Amerex from making promised deliveries to its wholesale customers. *Id*. The damages associated with the rack collapse and flooding included lost merchandise, cancellation of orders, late charges for orders fulfilled, and lost business income. *Id*. A panel of appraisers found that Amerex's damages

amounted to approximately $1.3 million, which was less than the amount

Amerex had already recovered from its primary insurance carrier. *Id*. at 198. We

held that the appraisal was appropriate given that it was limited to determining

factual issues about business conditions, such as when the effect of the rack

collapse stopped influencing the decline of Amerex's business and how much of

Amerex's loss was attributable to the rack collapse rather than the 2001 recession,

the September 11 terrorist attacks, and the bankruptcies of several of Amerex's

leading customers. *Id*. at 205–06.

Applying these principles, we conclude that appraisal is not appropriate in

this case. The dispute here concerns a legal issue about the meaning of

Regulation 64. Milligan is not claiming simply that the value of her loss was

greater than GEICO's calculation. Rather, her complaint is that by calculating her

loss using the average of three comparable vehicles available in the market (the

methodology used in the Market Valuation Report), GEICO failed to comply

with Regulation 64, which is incorporated into the Policy.

Defendants' argument that this case does not present a coverage issue

because GEICO paid Milligan's claim under the Policy misses the mark. Whether

a loss is covered is not the only legal question presented in an insurance case.

Questions over the extent of coverage and how to define the amount of loss also present legal questions of contract interpretation. The dispute here concerns the meaning of "the reasonable purchase price to the insured on the date of loss of a new identical vehicle." That is a legal question requiring the interpretation of Regulation 64.

Milligan's complaint does not explain what she believes would satisfy Regulation 64's requirement that she be paid the "reasonable purchase price . . . on the date of loss of a new identical vehicle." At oral argument, however, her counsel clarified that in Milligan's view, the Regulation requires the insurer to pay her the sticker price of a new identical vehicle. *See* Recording of Oral Argument at 14:50–15:00. GEICO, defending the methodology applied by CCC, contends that Regulation 64 permits it to determine the reasonable purchase price of a vehicle as of the date of loss by reference to evidence of the prices actually paid for such vehicles in the relevant market at or about the relevant time. Whichever view is correct, the disagreement presents a legal question regarding the meaning of Regulation 64, which is for the district court to decide.[6]

---

[6] Because we conclude that the question in dispute is not within the proper scope of an appraisal, we need not decide whether GEICO timely demanded appraisal. *See ONY, Inc. v. Cornerstone Therapeutics, Inc.*, 720 F.3d 490, 498 (2d Cir. 2013).

**III.     CCC's Demand for Appraisal**

We further conclude that the district court properly denied CCC's motion to compel appraisal. CCC was not a signatory to the Policy and has no other contractual relationship with Milligan. It argues that under the doctrine of equitable estoppel it is entitled to enforce the appraisal provision of the Policy against Milligan. Under certain circumstances we have compelled signatories to an arbitration agreement to arbitrate their claims against non-signatories if "the relationship among the parties, the contracts they signed . . . , and the issues that had arisen among them discloses that the issues the nonsignatory is seeking to resolve in arbitration are intertwined with the agreement that the estopped party has signed." *Denney v. BDO Seidman, LLP*, 412 F.3d 58, 70 (2d Cir. 2005) (internal quotations omitted).

However, any right CCC might have to request appraisal on a theory of equitable estoppel is derivative of GEICO's contractual right to do so. As CCC admitted at oral argument, if "GEICO has no right to an appraisal . . . CCC would have no right as well." Recording of Oral Argument 14:00–14:06. Because we affirm the district court's denial of GEICO's motion to compel appraisal, we similarly affirm its denial of CCC's motion to do the same.

## CONCLUSION

For the reasons stated above, we AFFIRM the order of the district court denying defendants' motions to compel appraisal.