******************************************************

The "officially released" date that appears near the beginning of each opinion is the date the opinion will be published in the Connecticut Law Journal or the date it was released as a slip opinion. The operative date for the beginning of all time periods for filing postopinion motions and petitions for certification is the "officially released" date appearing in the opinion.

All opinions are subject to modification and technical correction prior to official publication in the Connecticut Reports and Connecticut Appellate Reports. In the event of discrepancies between the advance release version of an opinion and the latest version appearing in the Connecticut Law Journal and subsequently in the Connecticut Reports or Connecticut Appellate Reports, the latest version is to be considered authoritative.

The syllabus and procedural history accompanying the opinion as it appears in the Connecticut Law Journal and bound volumes of official reports are copyrighted by the Secretary of the State, State of Connecticut, and may not be reproduced and distributed without the express written permission of the Commission on Official Legal Publications, Judicial Branch, State of Connecticut.

******************************************************

KARL KLASS *v.* LIBERTY MUTUAL
INSURANCE COMPANY
(SC 20451)

Robinson, C. J., and McDonald, D'Auria,
Kahn, Ecker and Keller, Js.

*Syllabus*

Pursuant to statute (§ 38a-316e (a)), "when a covered loss for real property
requires the replacement of an item or items and the replacement item
or items do not match adjacent items in quality, color or size, the insurer
shall replace all such items with material of like kind and quality so as
to conform to a reasonably uniform appearance."

The plaintiff, whose real property was insured under a homeowners insur-
ance policy issued by the defendant insurance company, filed in the
trial court an application to compel appraisal following damage to the
roof of his home. The defendant had accepted that the damage to the
roof was a covered loss under the policy and issued an estimate to
replace the slopes of the roof that had missing shingles. Thereafter, the
plaintiff's contractor provided an estimate that contemplated replace-
ment of the entire roof in order to match the front and rear roof slopes,
which was more costly than the defendant's estimate. As a result of the
parties' different estimates, the plaintiff notified the defendant that he
was demanding appraisal under the policy, which provided that any
dispute as to "amount of loss" is to be resolved by a panel comprised
of a disinterested appraiser selected by each party and an umpire
selected by those appraisers. The trial court initially denied the plaintiff's
application to compel appraisal, but, after the plaintiff filed a motion
to reargue and reconsider, and the court granted that motion, the court
rendered judgment granting the plaintiff's application. The defendant
appealed, claiming, inter alia, that the dispute between the parties was
ultimately a coverage dispute and that it was therefore improper for
the trial court to compel appraisal before it resolved the legal issue
regarding the coverage dispute. *Held*:

1. The trial court did not abuse its discretion in granting the plaintiff's motion
to reargue and reconsider, as the court's decision to grant the motion
implied that it agreed with the plaintiff that the court's initial denial of
the plaintiff's application to compel appraisal was in error.

2. The defendant could not prevail on its claim that the trial court had
improperly granted the plaintiff's application to compel appraisal: when
an insurer concedes the existence of a covered peril to an insured's
premises, issues concerning the extent of the insurer's obligation under
§ 38a-316e (a) to replace adjacent, undamaged items to achieve a reason-
ably uniform appearance are a component of the amount of loss and
are, therefore, part of the appraisal process, as the legislative history
of the statute reflected that the legislature intended to codify the existing
insurance industry practice of restoring damaged property to a compara-
ble preloss condition and contemplated that the determination of match-
ing would be subjective, made on a case-by-case basis, and resolved
through the appraisal process, and case law from other jurisdictions
was consistent with that approach; in the present case, the defendant
conceded that the damage to the plaintiff's roof was a covered loss
under the policy, and the parties' dispute regarding how many shingles
needed to be replaced in order to make the plaintiff whole was a factual
dispute that fell within the scope of the policy's appraisal clause.

Argued March 25, 2021—officially released January 11, 2022*

*Procedural History*

Action for an order to compel the defendant to pro-
ceed with an appraisal pursuant to a homeowners
insurance policy issued by the defendant, brought to
the Superior Court in the judicial district of Ansonia-
Milford, where the court, *Hon. Arthur A. Hiller*, judge

trial referee, granted the application and, exercising the powers of the Superior Court, rendered judgment ordering the defendant to proceed with an appraisal, from which the defendant appealed. *Affirmed.*

*John A. Donovan III*, with whom, on the brief, were *Anthony J. Antonellis*, *Kathleen C. Schaub* and *Brendan L. Labbe*, for the appellant (defendant).

*Michael J. LeMoult*, with whom were *Jon D. Biller* and *Brianna M. Kastukevich*, for the appellee (plaintiff).

*Karen L. Dowd* and *Brian S. Goodman*, pro hac vice, filed a brief for the National Association of Public Insurance Adjusters as amicus curiae.

*Jason Cieri* filed a brief for United Policyholders as amicus curiae.

*Opinion*

McDONALD, J. Connecticut's insurance law provides that, "[w]hen a covered loss for real property requires the replacement of an item or items and the replacement item or items do not match adjacent items in quality, color or size, the insurer shall replace all such items with material of like kind and quality so as to conform to a reasonably uniform appearance." General Statutes § 38a-316e (a) (matching statute). The principal issue in this case is whether a dispute as to the extent of an insurer's replacement obligation under the matching statute is a question properly relegated to the appraisal arbitral process or a question of coverage to be resolved by the court in the first instance before appraisal may proceed. The defendant, Liberty Mutual Insurance Company, appeals from the trial court's judgment granting the application of the plaintiff, Karl Klass, to compel appraisal with regard to such a dispute. We affirm the trial court's judgment.

The record reveals the following undisputed facts and procedural history. In 2018, the plaintiff contacted his insurer, the defendant, to report damage to the roof of his home. The defendant sent a representative to examine the loss, who—consistent with the plaintiff's observation—noticed a few shingles missing from the dwelling portion of the rear slope of the roof. The representative concluded that the missing shingles were consistent with wind damage, a covered loss under the homeowners policy of the plaintiff. The defendant accepted coverage and issued an estimate to replace the rear slopes of both the dwelling roof and the attached garage roof. The plaintiff's contractor inspected the roof and provided an estimate that contemplated replacement of the plaintiff's entire roof, dwelling and attached garage, at nearly double the cost of the defendant's estimate.

As a result of the parties' different repair estimates, the plaintiff notified the defendant that he was demanding appraisal under his homeowners policy. The policy provides that a dispute as to "amount of loss" is to be resolved by a panel comprised of a disinterested appraiser selected by each party and an umpire selected by those appraisers, effectively an arbitration panel.[1] See *Covenant Ins. Co.* v. *Banks*, 177 Conn. 273, 279–80, 413 A.2d 862 (1979) (holding that appraisal clause in insurance policy constituted " 'written agreement to arbitrate' " and, thus, was governed by arbitration statutes).

In a written reply, the defendant took the position that the plaintiff was not entitled to invoke the appraisal process in the absence of a "competing" estimate (i.e., one that addressed the claim for which the defendant had accepted coverage). The defendant stated that any dispute regarding the matching of the front and rear

roof slopes was a question of coverage rather than an issue for appraisal. Nevertheless, citing its interest in amicably resolving the dispute, the defendant agreed to appoint an appraiser to investigate the loss while reserving its right to contest the appraisal panel's authority to decide an issue of coverage.

The defendant's appraiser thereafter inspected the plaintiff's roof and issued a report concluding that, " 'given the roof configuration, it is reasonable to conclude that the shingles along the [east facing] (rear) slopes and ridge caps of the residence and garage can be replaced such that a reasonable uniform appearance of the roof covering is maintained.' " The defendant cited these conclusions in a letter it thereafter sent to the plaintiff denying "coverage" for the front slopes of the plaintiff's roof. The defendant noted that its adjustment of the claim—providing for the replacement of the entire rear slopes of both the dwelling and garage roofs—exceeded the requirements of the matching statute. In light of its denial of "coverage" for the front roof slopes, it contended that there was no valuation issue remaining for the appraisal process.

The plaintiff subsequently filed an application to compel appraisal in the Superior Court pursuant to General Statutes §§ 38a-307 and 52-410, casting the dispute between the parties as one concerning the amount of loss under the subject policy. The defendant filed an objection to the application, characterizing the dispute as one involving coverage, which, as a purely legal issue, must be resolved by the courts before an appraisal can proceed. In support of that proposition, the defendant cited a Second Circuit case, *Milligan* v. *CCC Information Services Inc.*, 920 F.3d 146 (2d Cir. 2019). The plaintiff then filed a motion requesting that the trial court order that any purported coverage dispute does not preclude the parties from moving forward with an appraisal, citing *Giulietti* v. *Connecticut Ins. Placement Facility*, 205 Conn. 424, 534 A.2d 213 (1987), as support.

The trial court initially issued a summary decision denying the plaintiff's application to compel appraisal, citing *Milligan* for the proposition that "the issue of coverage [must] be decided before the court makes a determination whether an appraisal is required." The plaintiff filed a motion to reargue and reconsider, contending that the trial court had overlooked controlling precedent—namely, this court's decision in *Giulietti*—and had misapprehended *Milligan*. The defendant objected to the plaintiff's motion, arguing that the plaintiff failed to demonstrate that there was some decision or principle of law that had been overlooked that would have controlling effect on the case. The trial court granted the plaintiff's motion to reargue and reconsider, and, following supplemental briefing, issued an order directing the parties to proceed to

appraisal. In reaching its decision, the trial court explained that it had misapprehended *Milligan* and concluded that *Milligan* simply confirms that appraisers cannot make coverage determinations. In light of that conclusion, the court rendered judgment granting the plaintiff's application to compel appraisal. The defendant appealed from the trial court's judgment to the Appellate Court, and we thereafter transferred the appeal to this court. See General Statutes § 51-199 (c) and Practice Book § 65-1.

The defendant raises three claims on appeal. First, it claims that the trial court improperly granted the plaintiff's motion to reargue and reconsider following its initial denial of the plaintiff's application to compel appraisal. Second, it contends that the dispute between the parties is ultimately a coverage dispute, and, thus, it was improper for the trial court to compel appraisal before the legal issue regarding the coverage dispute was resolved by the court. Finally, to resolve the purported coverage dispute, the defendant asks this court to adopt an interpretation of the matching statute that would limit the scope of replacement to, at most, the rear slopes of the plaintiff's roof.

We conclude that the trial court properly granted the plaintiff's application to compel appraisal. Because that conclusion rests in large part on our determination that the dispute between the parties is an appraisable dispute not involving coverage, we need not address the defendant's claims relating to resolution of coverage disputes.

I

The defendant's contention that the trial court improperly granted the plaintiff's motion to reargue and reconsider merits little discussion. We review the adjudication of a motion to reargue and reconsider for an abuse of discretion; see *Weiss* v. *Smulders*, 313 Conn. 227, 261, 96 A.3d 1175 (2014); which means that "every reasonable presumption should be given in favor of the correctness of the court's ruling. . . . Reversal is required only [when] an abuse of discretion is manifest or [when] injustice appears to have been done." (Internal quotation marks omitted.) *Patino* v. *Birken Mfg. Co.*, 304 Conn. 679, 698, 41 A.3d 1013 (2012).

"[T]he purpose of a reargument is . . . to demonstrate to the court that there is some decision or some principle of law which would have a controlling effect, and which has been overlooked, or that there has been a misapprehension of facts. . . . It also may be used to address [alleged inconsistencies in the trial court's memorandum of decision as well as] claims of law that the [movant] claimed were not addressed by the court. . . . [A] motion to reargue [however] is not to be used as an opportunity to have a second bite of the apple [or to present additional cases or briefs which could

have been presented at the time of the original argument] . . . ." (Internal quotation marks omitted.) *Hudson Valley Bank* v. *Kissel*, 303 Conn. 614, 624, 35 A.3d 260 (2012); see *Rider* v. *Rider*, 200 Conn. App. 466, 486 n.14, 239 A.3d 357 (2020).

The trial court did not abuse its discretion in granting the plaintiff's motion to reargue and reconsider. In its initial decision denying the plaintiff's application to compel appraisal, the trial court cited the Second Circuit's decision in *Milligan* for the proposition that coverage determinations must precede appraisal; *Milligan* v. *CCC Information Services, Inc.*, supra, 920 F.3d 152; without responding to the plaintiff's contention that this court stated a different rule in *Giulietti* and that *Milligan* should not be interpreted to conflict with *Giulietti*. The trial court's decision to grant reconsideration implies that it agreed with the plaintiff that it had overlooked *Giulietti* and that its prior order was in error. "If a court believes that it has made a mistake, there is little reason, in the absence of compelling circumstances to the contrary, to stick slavishly to a mistake." *Beeman* v. *Stratford*, 157 Conn. App. 528, 540, 116 A.3d 855 (2015).

## II

We therefore consider the defendant's claim that the trial court improperly granted the plaintiff's application to compel appraisal. The defendant makes several arguments regarding the propriety of this decision, all of which rest on the premise that the dispute between the parties is one pertaining to the legal question of coverage.[2] Although not expressly stated, we interpret the trial court's summary order as an implicit rejection of that premise. In its final decision, the trial court cited *Milligan* as holding "that appraisers cannot make coverage determinations [or decide] questions of law."[3] The only dispute on which the plaintiff sought appraisal was the extent of the defendant's replacement obligation pursuant to the matching statute. The trial court thus would not have ordered the parties to proceed to appraisal unless it viewed the dispute as a factual determination that did not pertain to coverage. Therefore, the threshold, and ultimately dispositive, issue before us is whether a dispute as to the scope of an insurer's replacement obligation under the matching statute is a question of coverage to be resolved by the courts or a question of the amount of loss to be resolved by the appraisal panel. We conclude that it is the latter.

With regard to the standard of review, although the plaintiff is correct that whether the insurance policy manifests the parties' intent to arbitrate a matter is generally a question of fact subject to review for clear error; see *A. Dubreuil & Sons, Inc.* v. *Lisbon*, 215 Conn. 604, 608–609, 577 A.2d 709 (1990); the legal obligation at issue in the present case is one engrafted by operation of law as a result of the legislature's enactment of the

matching statute. See *Garcia* v. *Bridgeport*, 306 Conn. 340, 351, 51 A.3d 1089 (2012). The relevant question in this case, therefore, is whether the legislature considered determinations like the one before us as a question relating to the amount of loss to be determined in the appraisal process or, alternatively, by a court when determining an insurer's coverage responsibilities. This is a question of law subject to plenary review. See, e.g., *Financial Consulting, LLC* v. *Commissioner of Ins.*, 315 Conn. 196, 209, 105. A.3d 210 (2014); *Nelson* v. *State*, 99 Conn. App. 808, 813, 916 A.2d 74 (2007).

Our analysis begins with the statutory text. See General Statutes § 1-2z (permitting court to consider extratextual sources only when statutory text is ambiguous or construction yields absurd or unworkable result). The matching statute provides in relevant part: "When a covered loss for real property requires the replacement of an item or items and the replacement item or items do not match adjacent items in quality, color or size, the insurer shall replace all such items with material of like kind and quality so as to conform to a reasonably uniform appearance. . . ." General Statutes § 38a-316e (a). Plainly, the text of the statute does not resolve the dispute before us. The statute does not explicitly indicate whether the resolution of matching disputes are to be decided by the courts in the first instance or by an appraisal panel; nor does it expressly characterize the scope of an insurer's replacement obligation as a question of coverage or one relating to amount of loss. By making a "covered loss" the precondition to an insurer's replacement obligation, however, the statute appears to suggest that the replacement obligation is of a different nature than the coverage obligation. Moreover, the guideposts for the making of such decisions— "adjacent" and "reasonably uniform appearance"—are strongly indicative of factual judgments based on visual inspection rather than legal determinations. General Statutes § 38a-316e (a); see *Welles* v. *East Windsor*, 185 Conn. 556, 560, 441 A.2d 174 (1981) (stating that "[t]he term 'adjacent' has no fixed meaning but must, instead, be interpreted in light of the relevant surrounding circumstances" and is "[n]ecessarily relative"); Webster's Ninth New Collegiate Dictionary (1985) p. 1290 (defining "uniform" as "presenting an unvaried appearance of surface, pattern, or color").

Because the text of the statute does not unambiguously answer the question before us, we look to extratextual sources for guidance. See, e.g., *Mayer* v. *Historic District Commission*, 325 Conn. 765, 775, 160 A.3d 333 (2017) ("[w]hen a statute is not plain and unambiguous, we also look for interpretive guidance to the legislative history and circumstances surrounding its enactment, to the legislative policy it was designed to implement, and to its relationship to existing legislation and [common-law] principles governing the same general subject matter" (internal quotation marks omit-

ted)). We begin with the legislative history of the matching statute, which is instructive in two respects. First, it reflects that the legislature intended to codify the existing insurance industry practice. See 56 H.R. Proc., Pt. 8, 2013 Sess., pp. 2402–2403, remarks of Representative Robert W. Megna. Apparently, some insurers had not been following industry practice and were replacing only damaged portions of covered property without regard to whether the property was restored to a comparable preloss condition. See id., p. 2403, remarks of Representative Megna; Conn. Joint Standing Committee Hearings, Insurance and Real Estate, Pt. 4, 2013 Sess., pp. 1115, 1119, remarks of Phil Flaker, public insurance adjuster. Second, that history reveals that the legislature contemplated that matching would be a "subjective" determination made on a case-by-case basis; 56 H.R. Proc., supra, pp. 2418–19, remarks of Representative Megna; with disputes resolved through the appraisal process. Representative Megna, the primary sponsor of the bill, explained that, if the insured and insurer disagree over the necessary scope of replacement, "they have a process in most policies called *the appraisal process*. They can—they can start that process going if they contest it."[4] (Emphasis added.) Id., p. 2422. The legislative history is devoid of any contrary indication that the legislature viewed the extent of an insurer's replacement obligation as a coverage issue or disputes as to matching as matters to be resolved by courts in the first instance.

The conclusion supported by the text of the statute and by its legislative history is consistent with case law from other jurisdictions. Other courts that have addressed this issue—whether applying their version of a matching statute or recognizing industry practice— have treated similar disputes as within the purview of appraisal. For instance, in *In re Pottenburgh* v. *Dryden Mutual Ins. Co.*, 55 Misc. 3d 775, 48 N.Y.S.3d 885 (2017), following a vandalism incident that gave rise to a covered loss under the homeowners policy of the insured, the insurer submitted an estimate for replacement of the siding on the garage wall that had been vandalized, while the insured submitted an estimate for replacement of the siding on all of the garage walls. Id., 776–77. The insured's estimate for full replacement was based on the lack of availability of siding for installation on the vandalized wall that would match the faded color of the undamaged siding on the remaining walls. Id., 777. The insurer refused to participate in the appraisal process on the ground that the dispute was one regarding the scope of coverage, i.e., the insured sought payment for components of the home that were not "covered" because they did not sustain direct physical damage from the vandalism incident. Id. The trial court concluded that the disagreement between parties was an appraisable dispute. The court noted that the insurer had not denied liability for damages sustained by the

vandalism incident. Id., 778. Rather, "the basis for [the insurer's] objections to an appraisal is limited to the extent of work required to repair the damage caused by the vandalism incident. Such disputes are factual questions that fall squarely within the scope of the policy's appraisal clause . . . ." (Citations omitted; internal quotation marks omitted.) Id.

The Supreme Court of Minnesota similarly characterized the extent of the insurer's replacement obligation to ensure matching "as mere incidents to a determination of the amount of loss or damage, [which] are appropriate to resolve in an appraisal in order to ascertain the amount of loss." (Internal quotation marks omitted.) *Cedar Bluff Townhome Condominium Assn., Inc.* v. *American Family Mutual Ins. Co.*, 857 N.W.2d 290, 293 (Minn. 2014); see id. (reviewing appraisal panel's determination as to whether insurer was obligated to replace siding on only sides of building damaged by hail, which was covered loss under policy, or on all sides to ensure matching); see also *Auto-Owners Ins. Co.* v. *Summit Park Townhome Assn.*, 100 F. Supp. 3d 1099, 1104 (D. Colo. 2015) (holding that, while appraisers cannot resolve parties' legal issues, they can make factual conclusions, such as "address[ing] the cost of replacing undamaged property to achieve matching"); *State Farm Lloyds* v. *Johnson*, 290 S.W.3d 886, 891 (Tex. 2009) ("Sometimes it may be unreasonable or even impossible to repair one part of a roof without replacing the whole. The policy provides that [the insurer] will pay reasonable and necessary costs to 'repair or replace' damaged property, and repair or replacement is an 'amount of loss' question for the appraisers." (Footnote omitted.)); *Edelman* v. *Certain Underwriters at Lloyds, London*, Massachusetts Superior Court, Docket No. 1784CV02471 (May 7, 2019) ("to the extent the [insurer] disputes the amount of matching loss . . . a reference proceeding [namely, appraisal] may be appropriate"). The defendant cites no case law adopting a contrary view.[5]

In this regard, we observe that the defendant's own conduct in this case was consistent with insurance industry practice and supports the propriety of having appraisers decide the extent of the insurer's replacement obligation to ensure matching of adjacent items. The defendant's own appraiser reached a conclusion on the very issue that the defendant claims is a legal question that is improper for resolution by appraisers. The report by the defendant's appraiser stated that the purpose of his examination of the plaintiff's property was to "determine the scope of damage to the roof . . . ." He noted that, on the basis of his examination, both sides of the roof presumably were not visible from the ground at the same time and, in light of that fact, reached a conclusion that replacement of only the damaged rear sides of the roofs and the roof ridges "would [not] compromise the uniform appearance of the roof

covering." The defendant's posture in this case also undermines its position that the present dispute raises a question of law. The defendant argued in its trial brief that the parties' dispute turned on the judicial construction of " 'reasonable uniform appearance' " but then argued in its appellate brief that the dispute turns on construction of " 'adjacent.' " None of the defendant's briefs, however, offered a definition for either term. At oral argument before this court, the defendant proffered a definition of "adjacent," but one suited to resolution of the present case, not a universally applicable definition.

The defendant's reliance on *Kamansky* v. *Liberty Mutual Ins. Co.*, Superior Court, judicial district of Hartford, Docket No. CV-18-6094809-S (April 30, 2019) (68 Conn. L. Rptr. 449), to support its position is misplaced. The court in *Kamansky* was faced with a question of pure statutory construction, presented in a declaratory judgment action, as to whether an insurer's obligation to replace "all such items" was limited to "adjacent" items or extended to all items of the same kind as the damaged item, adjacent or not, so as to create a reasonably uniform appearance.[6] Id. This question could be—and ultimately was—resolved without reference to specific facts, and the court's construction applied universally.

It appears to us that, at bottom, the defendant's underlying concern is that § 38a-316e (a) employs terms that afford too much discretion to decide what is "adjacent" and what is necessary to create a "reasonably uniform appearance." In response to that concern, we note that the appraisal panel's umpire, in exercising their discretion to make the matching determination in this case, ultimately may agree with the defendant's appraiser that the defendant's obligation extends only to the rear sides of the roofs and the roof ridges. Alternatively, the umpire may conclude that the defendant is required to repair the plaintiff's entire roof. Regardless, it seems to us that the necessarily fact intensive, case-by-case inquiry inherent in the task of matching requires that appraisers be afforded discretion in making matching determinations. We further note that, if the statutory terms are too elastic, the defendant's recourse is with the legislature. See, e.g., *Neighborhood Assn.*, *Inc.* v. *Limberger*, 321 Conn. 29, 45, 136 A.3d 581 (2016) ("[t]o the extent that the plaintiff's concerns arise from the expansive definitions in the act, its recourse lies with the legislature").

We conclude that, when an insurer concedes the existence of a covered peril to an insured's premises, issues concerning the extent of the insurer's obligation to replace adjacent, undamaged items to achieve a reasonably uniform appearance are a component of the "amount of loss" and are, therefore, part of the appraisal process. Here, the defendant concedes that the damage

to the plaintiff's roof resulting from wind damage was a covered loss under the homeowners policy of the plaintiff. The parties' disagreement regarding how many shingles need to be replaced—whether it be only the missing shingles, the rear slopes of the garage and dwelling roofs, or the entire roof—in order to make the plaintiff whole is a factual dispute that falls within the scope of the insurance policy's appraisal clause.

The judgment is affirmed.

In this opinion the other justices concurred.

* January 11, 2022, the date that this decision was released as a slip opinion, is the operative date for all substantive and procedural purposes.

[1] The appraisal clause in the defendant's policy essentially mirrors the one in the standard form set forth in General Statutes § 38a-307.

[2] For example, the defendant argues that, if we conclude that the appraisal panel has the authority to decide this coverage dispute, the courts should review the decision de novo, and that this court should resolve this coverage dispute by interpreting the statutory terms "adjacent items" and "reasonable uniform appearance" in § 38a-316e (a) to determine its replacement obligation to the plaintiff under the matching statute.

[3] The parties agreed, and the law is well settled, that—in the absence of a statutory provision to the contrary—coverage is a legal question for the courts. See, e.g., *Duane Reade, Inc.* v. *St. Paul Fire & Marine Ins. Co.*, 600 F.3d 190, 203 (2d Cir. 2010); *Johnson* v. *Nationwide Mutual Ins. Co.*, 828 So. 2d 1021, 1025–26 (Fla. 2002); *Quade* v. *Secura Ins.*, 814 N.W.2d 703, 706 (Minn. 2012); *Clark* v. *Sputniks, LLC*, 368 S.W.3d 431, 436 (Tenn. 2012); *Factory Mutual Ins. Co.* v. *Citizens Ins. Co. of America*, 288 Wis. 2d 730, 736, 709 N.W.2d 82 (App. 2005).

[4] Representative Megna contemplated a situation factually similar to the one before us: "[I]f a—a claim is [made] today, you could have an insurance company representative come out and say, you know, I'm just going to replace one piece of siding, I don't care that the other siding is [twenty] years old and faded by the sun. They could actually make that argument now. It's not common practice so they can do that. If they do and the homeowner or the business owner wants to contest it, they have a process in most policies called the appraisal process. They can—they can start that process going if they contest it." 56 H.R. Proc., supra, p. 2422. The National Association of Public Insurance Adjusters filed an amicus curiae brief in support of the plaintiff, in which it confirmed that matching determinations have been routinely performed as a part of the appraisal process.

[5] The defendant cites cases holding that questions of causation (i.e., how much of the damage to the affected property was caused by a covered event) present an issue of coverage. We view this determination to be an entirely distinct question from the one raised in the present case. Moreover, there is a split of authority on the question of whether causation is a matter of coverage; compare *Quade* v. *Secura Ins.*, 814 N.W.2d 703, 706 (Minn. 2012) (holding that appraiser's evaluation of "amount of loss" requires consideration of causation), with *Rogers* v. *State Farm Fire & Casualty Co.*, 984 So. 2d 382, 391–92 (Ala. 2007) (limiting appraiser's duty to determining monetary value of property damage and, accordingly, deciding that appraisers cannot make determinations as to causation); and the present case does not provide us with the occasion to weigh in on that debate. We note that, although we rely on one case that decided the causation question, *State Farm Lloyds* v. *Johnson*, supra, 290 S.W.3d 891, we rely on it only for the Texas Supreme Court's acknowledgment that the determination of whether replacement must extend beyond the damaged items is an amount of loss question for appraisers.

[6] The defendant misconstrues the trial court's decision in *Kamansky* as concluding that the undamaged sides of the insured's house were not "adjacent" to the damaged side. In *Kamansky*, the insured conceded that the undamaged garage sides were not "adjacent" to the damaged side. *Kamansky* v. *Liberty Mutual Ins. Co*, supra, 68 Conn. L. Rptr. 451. Therefore, the issue of whether nondamaged sides were "adjacent" to the damaged garage siding was not before the court.